Samuel S. Tripp,
Spec. Ref. Reference pursuant to an order dated February 18,1969, made by consent, to hear and determine the issues presented in this action (CPLR 4317, subd. [a]).
Since the complaint herein, verified on August 29, 1966, alleged that Chesebro-Whitman Co., originally named as plaintiff in this action, “is a Division of Patent Scaffolding Co., and in turn, a subsidiary of Harsco Corporation, which is a Delaware corporation duly qualified to do business within the State of New York” and this named plaintiff had no existence as an entity, corporate or otherwise, except as a division of the Delaware corporation, the title of the action was amended at the opening of the trial to read as it appears in the caption herein.
Inasmuch as it was conceded on the record that the plaintiff Delaware corporation was doing business within the State of New York, the defendant challenged that plaintiff was duly qualified to do so by filing of a certificate. Accordingly, the answer was amended to include the defense predicated upon subdivision (a) of section 1312 of the Business Corporation Law.
The complaint alleges three causes of action. The first is to recover $19,292.77 for rental of scaffolding and other construction equipment from June 8, 1964 through approximately March 8,1966, pursuant to an agreement executed by the parties on June 8, 1964. The second cause of action, originally to recover $11,714.15 was reduced at the opening of the trial to $10,235.20, by reason of a credit for an insurance loss recovered by plaintiff entered on October 29, 1965 in its credit accounts receivable ledger. This cause of action is to recover for the defendant’s alleged refusal to return part of the equipment which is the subject of the first cause of action, plaintiff claiming that defendant ‘ ‘ has converted same to its own use and benefit ’ ’. In the third cause of action plaintiff seeks judgment for the combined sum sought in the first two causes based ‘ ‘ upon an account stated ’ ’.
After denying material allegations of the complaint, the defendant asserts as a first defense that it deems in Point III of its main posttrial brief to constitute ‘1 an accord and satisfac *646 tion ” and a third defense, that it paid to plaintiff $5,000 “ on account of the rental alleged in the complaint
By way of a second defense, setoff and counterclaim for $14,300, the answer alleges that some of the equipment was faulty, defective, out of repair, bent, and otherwise unsuitable for defendant’s use, as a result of which, it was delayed in its work when plaintiff did not promptly replace or repair such equipment in accordance with its promise to do so. Additionally, defendant alleges that plaintiff undertook to pick up and promptly remove, at its request, the rented equipment and materials alleged in the complaint; that although notified to do so, plaintiff failed and neglected to do so for a long time and by reason thereof ‘1 materials and parts thereof were stolen and taken away by others not known to defendant and without defendant’s fault or cause ”; and that “ except for the materials and/or equipment stolen as herein alleged, defendant returned all materials and equipment to the plaintiff. ’ ’
The reply denies the foregoing .allegations except that plaintiff admitted that it had ‘ ‘ agreed to provide transportation if required by the defendant, which transportation was to be provided in accordance with usual trade practice.”
At the close of plaintiff’s case, its second cause of action for the conversion of the rented equipment that was not returned by defendant was dismissed for failure of proof, and its third cause of action based “ upon an account stated ” with respect to the combined sum of the first two causes of action, was dismissed outright.
With respect to the second cause of action, plaintiff’s proof of damages for defendant’s alleged failure to return some of the reified used equipment was bottomed solely upon its unpublished office price lists for new equipment as if that which had not been returned had been sold new. There was no basis for such computation for ‘ ‘ shortages ’ ’ in the agreement executed by the parties. Nor was there any proof of a universal custom to support such theory of recovery. Plaintiff utterly failed to adduce any proof of the reasonable value of the equipment claimed not to have been returned. Inasmuch as such proof would no doubt be available to plaintiff in a new action, the dismissal of the second cause of action was without prejudice. (Giglio v. Haber, 19 A D 2d 793; 1964 Supplementary Practice Commentary to CPLR 5013 by David D. Siegel, Esq., McKirmey’s Cons. Laws of N. Y., Book 7B.)
Plaintiff unquestionaby rented used scaffolding equipment to defendant, first at the so-called “ Borden ” site under Order No, R-2742 and later at its so-called “ Maspeth ” site under *647 Order No. S-174. When defendant paid $5,000 to plaintiff in connection with the Maspeth site by check dated April 14, 1965, the plaintiff, regarding all transactions with defendant as a “ running account ”, applied that payment “ in discharge of the items of debt antecedently due in the order of time in which they stood in the account ”, under the “ first-in first-out ” rule expressed in such cases as Carson v. Federal Reserve Bank (254 N. Y. 218, 232) and Foss v. Riordan (84 N. Y. S. 2d 224, 233, affd. 273 App. Div, 982, mot. for Iv. to app. dsmd. 298 N.Y. 509).
The older alleged 1 £ debt ’ ’ to which plaintiff had applied the April 14, 1965 check for $5,000 included its bill dated July 24, 1964 in the sum of $4,766.32 for used equipment allegedly not returned from the ££ Borden” site. Since this amount was computed on the same basis as was the dismissed second cause of action in the instant suit, the parties stipulated on the sixth day of trial — June 10, 1969 — to withdraw, without prejudice to plaintiff, its claims for alleged 11 shortages ’ ’ in connection with both jobs, totaling $15,001.52 subject to “ defendant’s right to question the power of this Court to dismiss without prejudice as to the Maspeth Avenue alleged shortage in the sum of $10,235.20.” The balance of plaintiff’s claim in the present action was stipulated in the maximum amount of $14,532.77 £ £ which includes all credits to the defendant and is arrived at, as follows: Original claim, $29,534.29 less $10,235.20 (second cause of action) and $4,766.32, reported shortage ” in connection with the Borden site.
It was further stipulated: ‘ ‘ Nothing herein shall be deemed an admission of the validity of plaintiff’s claim by the defendant; this stipulation being intended to define and isolate the scope of the amended action now on trial.”
The foregoing stipulation leaves for determination in the instant action plaintiff’s first cause of action now limited to rentals in the total sum of $14,532.77 and defendant’s setoff and counterclaim for damages in the sum of $14,300. The defense, based upon subdivision (a) of section 1312 of the Business Corporation Law was dismissed. The certificate under the seal of the Secretary of State dated May 15, 1969, establishes that the plaintiff Harsco Corporation ££ filed qualifying papers ” on March 29, 1956; that “ a certificate of authority to do business in the State of New York was issued to it on the same day”; that “no Surrender of Authority has been filed” and, ‘ ‘ so far as shown by the records ’ ’ of the Department of State, ‘1 such corporation is still authorized to do business in the State of New York
*648 To establish its claim to recover from the defendant the unpaid balance for the rental of scaffolding and other construction equipment for the Maspeth job, plaintiff relied upon its records kept in the regular course of business, consisting of delivery and return receipts and the billings to defendant. These were received in evidence pursuant to the “ shop-book rule” now embodied in CPLR 4518 (subd. [a]) which is a re-enactment without substantive change in language of the “business records” exception to the hearsay rule formerly section 374-a of the Civil Practice Act. (Matter of City of New York [5th Ave. Coach], 42 Misc 2d 319, 320-321, cited in Yeargans v. Yeargans, 24 A D 2d 280.) Accordingly, its construction remains the same. (Brenner v. Title Guar. & Trust Co., 276 N. Y. 230, 236.)
The first sentence of CPLR 4518 (;subd. [a]) “provides for the introduction into evidence of a record made in the regular course of any business, where it was the regular course of such business to make it, and it was made at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter.” (Toll v. State of New York, 32 A D 2d 47, 49.) The second sentence of the rule provides that all “ other circumstances of the making of the memorandum or record, including lack of personal knowledge by the maker, may be proved to affect its weight, but * * * not its admissibility.” (Kelly v. Wasserman, 5 N Y 2d 425.) The term “ business ” is “broadly defined” in the third sentence of the rule “as including ‘ business, profession, occupation and calling of every kind ’ ”. (Williams v. Alexander, 309 N. Y. 283, 286.)
The purpose of the foregoing “ business records ” rule is to eliminate the necessity of calling a large number of employees who participated in making entries in the business records. (Williams v. Alexander, supra.) As was observed by Judge Learned Hand in Massachusetts Bonding & Ins. Co. v. Norwich Pharmacal Co. (18 F. 2d 934, 937): “ The routine of modern affairs, mercantile, financial and industrial,, is conducted with so extreme a division of labor that the transactions cannot be proved at first hand without the concurrence of persons, each of whom can contribute no more than a slight part, and that part not dependent on his memory of the event. Records, and records alone, are their adequate repository, and are in practice accepted as accurate upon the faith of the routine itself, and of the self-consistency of their contents. Unless they can be used in court without the task of calling those who at all stages had a part in the transactions recorded, nobody need ever pay a debt, if only his creditor does a large enough business.”
*649 The Appellate Division of the Second Department held in Bishin v. New York Cent. R. R. CVo. (20 A D 2d 921, 922) that the statute rendering admissible records made in the regular course of business “makes no exception for records which also happen to be self-serving. It has been observed that the self-serving aspect of a record does not preclude its admissibility under the statute but is merely a consideration affecting the weight to be given to it (Publishers’ Book Bindery v. Ziegelheim, 184 Miscv. 559).” In summary, once the requirements of the rule are met, business records are to be admitted. Any evidentiary showing that they have low probative force must be considered by the' trier of the facts in deciding how much weight to give them. (5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4518.02.)
In Point I of defendant’s main posttrial brief, defendant, in effect, ignores universal decisional law concerning business records as outlined above when it concludes at page 11 that it “was * * # denied essential rights since it was unable to cross-examine into the core of these records ”. The length of this trial not only proves otherwise but the very purpose of the Legislature in enacting the “ Business records ” statute was ‘ ‘ to permit a writing or record, made in the regular course of business, to be received in evidence without the necessity of calling as witnesses all of the persons who had any part in making it, provided the record was made as a part of the duty of the person making it, or on information imparted by persons who were under a duty to impart such information ”. (Johnson v. Lutz, 253 N. Y. 124, 128; emphasis supplied.)
The records here introduced in evidence, were bottomed on the required foundation for their reception and it is only their weight as provided in the second sentence of CPLR 4518 (subd. [a]) that remains for consideration in view of their self-serving nature and the extensive cross-examination of the witnesses the plaintiff did produce to “ put flesh upon the bones ” of these records. These witnesses were present and former employees, who as part of their duties made and maintained such records from information imparted to them by persons whose duty it was to do so. I believe them.
As already noted, defendant’s counterclaim for $14,300 is predicated upon the claim that some of the equipment supplied by the plaintiff was faulty, defective, out of repair, bent and otherwise unsuitable for defendant’s use, as a result of which defendant was delayed in its work when plaintiff did not promptly replace or repair such equipment in accordance with its promise to do so.
*650 I was not impressed by the testimony of the defendant’s witness, Isie Forman, whose partiality was obvious, nor by the testimony of its President, Abraham J. Eodolitz. The latter testified on direct examination that he was on the Maspeth Avenue job during June, July and August of 1964 “ almost every day” and consequently he observed the .occurrences to which he attested. On cross-examination he added: “ I would say I was in charge of the whole works * * *. In' essence, I ran my own jobs ”. When asked, “Who was under you? Who supervised the laborers ? ” he replied, “ Well, Fuchs would be working under me, and from Fuchs there was other people. But I had as much to do with every man on the job as anybody else ’ ’. Mr. Forman, defendant’s principal witness, in its employ since the latter part of 1957, when asked at the conclusion of his recross-examination “ Was Mr. Eodolitz on the job very much? ” replied “ Well, he’d come and take a look, and that’s it.” (Emphasis supplied.)
Eichard Wallace, who had been employed by Cheseboro-Whitman Company in 1964 and 1965 as sales manager, stated in rebuttal: “that the job .started in using heavy-duty scaffolding, and Mr. Fuchs did not like the heavy-duty or it didn’t work correctly for him; and it was a transition from heavy-duty to standard equipment, where, instead of following the initial layout, it was changed, and the standard equipment was brought on the job.” When asked “ At whose request were the changes made? ” Mr. Wallace answered “ Mr. Fuchs.”
Concerning subsequent conversations with Mr. Eodolitz, Mr. Wallace stated: “ I was always asking for money, trying to keep the account up to date and payment as soon as possible after invoicing. There was a question on material, heavy-duty equipment, standard equipment, and some problems ” of which “ The .switching of equipment was one. Some jacks that were to be returned, another.” As to the cause for their return, he replied: “ I don’t know whether it ivas the jacks wouldn’t turn because of the threads being nicked or whether they were coated with sand or what. But there was some problems ” (emphasis supplied).
As damages on its counterclaim for $14,300 occasioned by delay, defendant urges, at page 44 of Point IY of its main brief: “ At the request of his supervisor, Mr. Fuchs, the witness, Isie Forman, computed the amount that the delay cost defendant as being the amount of approximately $10,000. This was supposedly Mr. Eodolitz who testified that the loss amounted to $10,000 exclusive of additional interest required to be paid upon defendant’s construction loan.”
*651 Neither the $14,300 originally sought nor the $10,000 figure mentioned in the brief was therein broken down into the component elements of which either amount is comprised. I am of the opinion that the testimony of Messrs. Eodolitz and Forman is an insufficient predicate for the amount of damages sought, proof of which ‘ ‘ lacked that standard of reasonable certainty required to establish damages. ’ ’ The ‘ ‘ fact of damage must be .susceptible of ascertainment in some manner other than mere conjecture or guesswork (25 Fifth Ave. Mgt. Co. v. Ivor B. Clark, Inc., 280 App. Div. 205, 208, affd. 304 N. Y. 808.) There are some standards in this record, however, sufficiently definite to furnish a “ practical means ” for computing damage (resulting from the delay caused by the return of the jacks for the reasons conceded by Mr. Wallace) “ that will be just to the parties.” (Dunkel v. McDonald, 272 App. Div. 267, 270, affd. 298 N. Y. 586.)
Mr. Forman testified that he was paid $200 per week, or $40 for a so-called ‘1 short ’ ’ day when he performed as bricklayer foreman, and $300 per week, or $60 for a so-called “ long ” day, when he performed also as general foreman on the job under the supervision of his superior, Leonard Fuchs, now deceased. Mr. Fuchs was the chief engineer who worked for the defendant upon a retainer basis. Since Mr. Forman admitted doing other things on this job, his daily wages for the purpose of ascertaining damages must be calculated on the basis of a “ short ” day. He also testified that a “ Steel King”, a type of laborer who works on a bending machine, four lathers and five laborers worked in the disassemblying and reassembling of the scaffold. The total wages paid to the foregoing for the seven workdays lost, based on Mr. Forman’s testimony concerning rates, aggregate $3,050.60.
Mr. Fuchs’ alleged $90 per day, to which Mr. Forman attested, may not be included as damages since he worked for the defendant on a retainer basis and performed other tasks. Nor may the wages of carpenters (Mr. Forman was uncertain of the exact number) be considered since it appears from his testimony that they also worked on other phases of the job. To include their wages and the salary of Mr. Fuchs in computing damages on the counterclaim would be unjust to the plaintiff since to do so would be guesswork or conjecture rather, than mere difficulty of ascertaining damages. (1 Clark, New York Law of Damages, § 80, p. 139.) In any event, except for the $3,050.60 calculated upon testimony in the record, the proof in this case lacked that standard of reasonable certainty required to *652 establish damages. (Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 209.)
Billings were made by plaintiff upon a time basis resulting in a charge to defendant equal to the period of its possession of the component parts used in erecting its scaffold. Data for these bills was derived from the delivery and return tickets in evidence. Bills were then mailed in duplicate to the defendant. Upon the basis of the proof in this record, I find that the rentals to which plaintiff is entitled under the agreement total $14,416.05 as computed in Point IV of plaintiff’s main brief. This consists of a breakdown by days of the components on the job and the amount due, of which the last money entries on each page of ‘ ‘ Appendix A ’ ’ accompanying that brief are recapitulated. This “ Appendix ” contains take-offs from the delivery and return tickets in evidence, detailing the components that were delivered and returned, including the quantity on the job daily and the monthly computation. Because the foregoing summaries reflect the exhibits in evidence, they are included in the County Clerk’s file in this action and, for convenience, will be incorporated by reference in the judgment to be entered as summaries of plaintiff’s documentary proof. (See Hassall v. Moore, N. Y. L. J., March 7, 1934, p. 1114, col. 7 [Cropsey, J.], mod. on other grounds 243 App. Div. 572.)
In arriving at the rental figure of $14,416.05 due from the defendant, I have not overlooked its claim (Point V) based on delivery tickets A4858, A5123, A5222 and A5781 included in plaintiff’s Exhibit “ 2 ” but not in defendant’s Exhibit “ H ” although photo static copies thereof were received in evidence as defendant’s Exhibit “I”. I find, however, that plaintiff’s version of the defendant’s claimed discrepancy is persuasive rather than that of defendant’s President, Mr. Rodolitz. Delivery of the components involved was not denied. Were defendant’s version accepted that the above-numbered delivery tickets were duplicates, there would be an over-return of components — a result that finds no basis in logic nor in fact as disclosed by this record.
It follows from all of the foregoing that plaintiff is entitled to judgment on its first cause of action for the difference between $14,416.05 in rentals due from defendant and the latter’s damages of $3,050.60 on its counterclaim — or the net amount of $11,365.45 with interest from June 1,1966, together with taxable costs and disbursements. The plaintiff’s third cause of action on an account stated is dismissed. Its second cause of action for alleged shortages as set forth in the stipulation on the record is dismissed “ without prejudice ”,