**LANKLER SIFFERT & WOHL, LLP, Decision Strategies, L.L.C., Decisionquest, Inc., Lexecon Inc., William Purcell, Steve Thel, Donna M. Hitscherick, and Cornerstone Research, Inc., Plaintiffs,**

v.

**A. Cal ROSSI, Jr., Basic Capital Management, Inc. and Gene Phillips, Defendant.**

**A. Cal Rossi, Jr. and Basic Capital Management, Inc., Third–Party Plaintiffs,**

v.

**American International Specialty Lines Insurance Company, Third–Party Defendant.**

**No. 02 Civ. 10055(RWS).**

United States District Court, S.D. New York.

Oct. 10, 2003.

**25.** Pl. Mem. 17–18.

**26.** *See, e.g., Karoon v. New York City Transit Auth.,* 241 A.D.2d 323, 659 N.Y.S.2d 27 (1st Dept.1997).

■■■■■■

Lankler Siffert & Wohl by Frank H. Wohl, Ethan G. Zlotchew, New York City, Pro se.

Redwine Law Offices by John F. Redwine, Dallas, TX, for Defendants Basic Capital Management, A. Cal Rossi and Intervenor American Realty Trust.

Law Offices of Mitchell Madden by Mitchell Madden, Dallas, TX, for Defendant Gene Phillips.

Law Offices of Sheldon Eisenberger by Sheldon Eisenberger, New York City, for Defendants.

## OPINION

SWEET, District Judge.

Plaintiffs Lankler Siffert & Wohl LLP ("LSW"), Decision Strategies, L.L.C. ("Decision Strategies"), DecisionQuest, Inc. ("DecisionQuest"), Lexecon, Inc. ("Lexecon"), Steve Thel ("Thel") and Donna M. Hitscherich ("Hitscherich") (collectively, the "Plaintiffs"), have moved for partial summary judgment granting the cause of action for Account Stated against Defendants A. Cal Rossi, Jr. ("Rossi") and Basic Capital Management, Inc. ("BCM").[1] Defendants Rossi and BCM, along with Gene Phillips, have cross-moved to disqualify Frank H. Wohl ("Wohl") and LSW because of an alleged conflict of interest.

For the reasons set forth below, the Defendants' motion to disqualify is denied and the motion for partial summary judgment is granted.

---

**1.** Plaintiffs William Purcell and Cornerstone Research, Inc. have not moved for partial summary judgment. Further, the moving plaintiffs have not sought partial summary judgment against defendant Gene Phillips.

### Prior Proceedings

Plaintiffs filed their complaint in this action on December 19, 2002, alleging nonpayment of attorney's fees and other related fees. Defendants Rossi and BCM filed a third party complaint against American International Specialty Lines Insurance Company ("AISLIC") on February 24, 2003.

Plaintiffs filed the motion for partial summary judgment on April 29, 2003. Defendants cross-moved to disqualify Wohl on June 6, 2003. After submission of briefs, both motions were deemed fully submitted on August 5, 2003.

### Facts

The following facts are taken from the parties' Rule 56.1 statements and, as required, are construed in the light most favorable to the non-movant, as applicable. They do not constitute findings of fact by the Court.

Rossi, the vice president of defendant BCM, was indicted by a United States grand jury in the Southern District of New York on June 7, 2000. The indictment charged him with racketeering and racketeering conspiracy, as well as other serious violations of federal laws for which convictions would have resulted in substantial prison terms.

Shortly after the indictment, Rossi retained a law firm, plaintiff LSW, to defend him. Trial preparation required over 15 months of intensive discovery (including the analysis of hundreds of hours of tape recorded conversations) and motion practice. On February 13, 2002, after more than three months of trial, Rossi was acquitted of all charges.

Rossi and BCM entered into a written agreement with LSW whereby Rossi and BCM agreed to pay LSW for services rendered and to reimburse LSW for any additional charges incurred by LSW on Rossi's behalf. LSW provided Rossi with professional services in accordance with the agreement and submitted invoices to Rossi and BCM.

According to Plaintiffs, LSW engaged Decision Strategies in or about August 2000, at Rossi's and Phillips' request, and with their approval, to conduct detailed investigations into the government's informant and principal witness at trial, and into several of Rossi's activities and business contacts in Europe, Mexico, the Caribbean and South America.

According to Plaintiffs, LSW engaged DecisionQuest in or about December 2000, at Rossi's and Phillips' request, and with their approval, to conduct jury research, consult on trial strategy and help prepare graphics presentations for use a trial.

According to Plaintiffs, LSW engaged Thel, an expert in securities law, in or about July 2001, at Rossi's and Phillips' request, and with their approval, to conduct a detailed study of the proposed sale of American Realty Trust ("ART") preferred shares, as well as other transactions involving the securities of ART that the government claimed were improper.

According to Plaintiffs, LSW engaged Lexecon in or about August 2001, at Rossi's and Phillips' request, and with their approval, to conduct a detailed study of the proposed sale of ART preferred shares, as well as other transactions involving the securities of ART that the government claimed were improper.

According to Plaintiffs, LSW engaged Hitscherich, an expert in securities market practices, in or about October 2001, at Rossi's and Phillips' request, and with their approval, to conduct a detailed study of the proposed sale of ART preferred shares, as well as other transactions involving the securities of ART that the government claimed were improper.

Defendants contest whether Decision Strategies, DecisionQuest, Lexecon, Thel or Hitscherich were engaged at the request of any of the Defendants, and contend that all such consultants were engaged at the recommendation and insistence of Wohl.

On or about February 19, 2002, March 19, 2002, April 30, 2002, May 16, 2002, June 20, 2002, July 18, 2002 and August 13, 2002, LSW submitted invoices and statements of account to Rossi and BCM. An account was stated between (a) Rossi and BCM and (b) LSW for the services rendered.

On or about January 25, 2002, March 1, 2002 and March 20, 2002, Howard Scklolnik, Vice President of Finance of DecisionQuest, directed Nicole Khoshnoud, Controller at DecisionQuest, to send invoices and statements of account to LSW. The DecisionQuest accounts were sent to Rossi and BCM by LSW on or about February 4, 2002, March 20, 2002 and May 9, 2002.

On or about December 2, 2001, December 31, 2001 and January 28, 2002, Thel sent invoices and statements of account to LSW. The Thel accounts were sent to Rossi and BCM by LSW on or about December 14, 2001 and February 4, 2002. Defendants contend that the Plaintiffs have failed to account for the retainer paid to Thel. Plaintiffs reply that Rossi received Thel's September 1, 2001 invoice, which refers to the application of the $10,000 retainer, as an enclosure to LSW's monthly billing letter, dated October 26, 2001.

On or about October 15, 2001, December 14, 2001, January 16, 2002 and February 18, 2002, Charles C. Cox ("Cox"), Senior

Vice President of Lexecon, directed Mark W. Zumbach, Vice President of Lexecon, to send invoices and statements of account to LSW. The Lexecon accounts were sent to Rossi and BCM by LSW on or about February 4, 2002 and March 20, 2002.

On or about February 12, 2002, Hitscherich sent an invoice and statement of account to LSW. The Hitscherich account was sent to Rossi and BCM by LSW on or about March 20, 2002.

On or about May 30, 2002, Thomas Ierubino, a licensed collection agent in the State of Maryland, at the direction and on behalf of Decision Strategies, sent a statement of account to Rossi and BCM, with a copy to LSW.

Defendants indicate that BCM and its staff were charged with the receipt, processing, review and payment of invoices submitted by Plaintiffs. They also indicate that they have not received all of the invoices which LSW asserts that it sent on behalf of itself and the consultants. In particular, Defendants have not received an invoice reflecting the amount that Lexecon claims it is due.

The following chart summarizes the date since the last payment from Rossi and BCM and the amount due and owing, plus interest, on the accounts of the six plaintiffs:

| Account | No Payment Since | Amount Due and Owing (plus interest) |
|---|---|---|
| Decision Strategies | December 2001 | $135,819.13 |
| Lexecon | December 2001 | $162,511.01 |
| LSW | January 2002 | $775,902.10 |
| Hitscherich | January 2002 | $ 4,325.00 |
| DecisionQuest | January 2002 | $118,796.03 |
| Thel | February 2002 | $ 4,680.00 |

According to Plaintiffs, neither Rossi nor BCM communicated to LSW any objection to LSW's fees or charges, or the fees and charges of any of the retained experts in these accounts prior to Defendants' answers of February 24, 2003, either as to the quality or the price of the professional services and charges.

Defendants contend that several objections to the charges submitted to them were made prior to February 24, 2003. Defendants allege that as early as the fall of 2001, Rossi, BCM and Phillips, and counsel on their behalf, communicated disputes that had arisen between BCM and its insurance company regarding the reasonableness and necessity of charges from LSW, Decision Strategies, DecisionQuest and Lexecon.

Defendants further contend that Rossi and Phillips raised their own concerns regarding the fees and charges of LSW, Decision Strategies, DecisionQuest and Lexecon in December 2001 and January 2002.

According to Defendants, when Rossi and Phillips raised these objections, Wohl advised them not to raise such issues on the eve of trial, but allegedly assured them that at the conclusion of trial he would review the bills of LSW for reasonableness and either assist in the resolution of disputes with BCM's insurance company or make appropriate adjustments to the bills. Defendants also contend that Wohl agreed that he would work on behalf of Defendants to resolve the dispute between BCM's insurance company and Decision Strategies, DecisionQuest and Lexecon, or else to negotiate an adjustment to such billings.

Wohl allegedly communicated directly with BCM's insurance carrier regarding the disputed invoices as early as December 2001.

Defendants also contend that despite repeated requests from Rossi, Phillips and BCM, they never received from LSW any justification or further support for the nearly $300,000 in fees charged that AISLIC declined to pay due to questions of reasonableness. Such requests were made by Defendants in order to obtain additional payments from AISLIC.

### The Motion to Disqualify Wohl Is Denied

 Motions to disqualify counsel have long been disfavored in this Circuit. *See e.g., Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791–92 (2d Cir.1983) (enumerating reasons why disqualification motions are disfavored); *Bennett Silvershein Assoc. v. Furman,* 776 F.Supp. 800, 802 (S.D.N.Y.1991) ("The Second Circuit has indeed been loathe to separate a client from his chosen attorney ..." (citations omitted)). "Disqualification motions are often made for tactical reasons, and thereby unduly interfere with a party's right to employ counsel of his choice." *Skidmore v. Warburg Dillon Read LLC,* No. 99 Civ. 10525, 2001 WL 504876, at *2 (S.D.N.Y. May 11, 2001) (*citing Board of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir. 1979)). Disqualification motions, "even when made in the best of faith ... inevitably cause delay." *Evans,* 715 F.2d at 792 (*quoting Nyquist,* 590 F.2d at 1246). A "high standard of proof" is therefore required from one who moves to disqualify counsel. *Id.* at 791 (*quoting Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2d Cir.1978)).

 Defendants argue in part that Wohl should be disqualified pursuant to provisions of the Rules of Professional Responsibility, including DR 4–101(C). However, it "[i]s well established that the Federal Courts are not bound by the New York Code of Professional Responsibility and that the Code is not to be rigidly applied." *The Cadle Co. v. Demadeo,* 256 F.Supp.2d 155, 156 (E.D.N.Y.2003) (*citing Bottaro v. Hatton Associates,* 680 F.2d 895, 896–97 (2d Cir.1982)). "In a technical sense, the only truly binding authority on disqualification issues is Circuit precedent, because our authority to disqualify an attorney stems from the Court's inherent supervisory authority to 'preserve the integrity of the adversary process ...'" *Skidmore,* 2001 WL 504876, at *2 (*quoting Nyquist,* 590 F.2d at 1246). The Rules of Professional Responsibility nevertheless provide "guidance on issues of professional conduct." *Paretti v. Cavalier Label Co.,* 722 F.Supp. 985, 986 (S.D.N.Y.1989).

 In light of these considerations, this Circuit applies the "substantial relationship" test first articulated in *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265 (S.D.N.Y.1953) (Weinfeld, J.). As the test is currently articulated,

> an attorney may be disqualified in a particular case if:
>
> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit and;
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Regal Marketing Inc. v. Sonny & Son Produce Corp.,* 2002 WL 1788026, at *5 (Aug. 1, 2002) (*citing Evans,* 715 F.2d at 791). The parties do not dispute that Rossi was a former client of Wohl and LSW. A

substantial relationship is recognized for disqualification purposes "only when the issues involved [are] identical or essentially the same." *Government of India,* 569 F.2d at 740 (internal quotations omitted).

■ Defendants do not contest that Wohl is entitled to represent himself and his law firm in a fee dispute against former clients. They seek to disqualify Wohl on the basis of his representation of the seven other individuals and entities that LSW retained on the Defendants' behalf in order to assist in Rossi's criminal defense. Defendants first note that LSW was in possession of confidential information regarding the Defendants as part of the criminal defense, and that much of that information was "not required to be further disseminated to experts retained by" LSW. Def. Disqualification Mem. at 2. Defendants further allege that Wohl received confidential information from the Defendants regarding the invoices that are at the center of the present litigation, and in fact committed to representing the Defendants in a dispute between the Defendants and BCM's insurance company when the insurance company contested some of the invoices. According to the Defendants, Wohl "agreed, on behalf of the Defendants, to review with the experts he had retained [the experts'] billing in light of the issues raised and to negotiate on the defendant's behalf in that regard." *Id.* The Defendants allege a conflict of interest because LSW now represents those experts in litigation seeking unpaid fees from the Defendants.

The Plaintiffs counter that LSW's prior criminal representation of Rossi is not substantially related to the present fee collection matter. Plaintiffs also argue that because the retained experts were part of Rossi's criminal defense team, Rossi should have expected that they would be informed extensively about the criminal case and defense strategy. For example, DecisionQuest, which was retained to conduct jury studies and focus groups, was required to be informed of every aspect of the criminal case.

As to the Defendants' insurance dispute, Plaintiffs argue that LSW did not represent the Defendants in their efforts to seek reimbursement or to discount the fees charged by LSW's co-plaintiffs. Plaintiffs also contend that Defendants have provided no evidence indicating that its confidences relating to the insurance collection matter were conveyed to LSW.

When an attorney sues a former client to collect unpaid attorney's fees, courts have not found a substantial relationship between the previous matter and the fee collection litigation. In *T.C. Theatre,* the case which initiated the substantial relationship test, the court found no substantial relationship, holding that the right of the attorney,

> to recovery of additional fees, if any, does not depend on the disclosure of confidential communications, but, rather, upon the nature, extent and importance of the services performed by him. He could enumerate the various conferences with his client without detailing the matters which might have been discussed.

113 F.Supp. at 271–72. The Connecticut Superior Court, employing a similar standard from Rule 1.9(a) of the Rules of Professional Conduct, held that "the only connection between this case and the plaintiff's prior representation is the matter of the allegedly unpaid fees, and this is not the kind of substantial relationship contemplated by the Rule." *Cooney & Bainer, P.C. v. Milum,* No. CV94–024 65 58, 1995 WL 373951, at *4 (Conn.Super. June 19, 1995).

Defendants also allege that LSW represented the Defendants in its fee disputes with BCM's insurance company. If true,

such representation may be substantially related to the fee collection litigation. As evidence of LSW's representation of BCM, Defendants assert that Wohl was aware that AISLIC considered certain charges submitted by LSW and the expert consultants as unreasonable and had declined to pay them. Defendants further argue that Wohl had direct contact with representatives of AISLIC on this matter, and that Wohl committed to assist Phillips, Rossi and BCM in their efforts to resolve the dispute with AISLIC or in working to renegotiate the billing with the expert consultants at the conclusion of the criminal trial. BCM's counsel, John F. Redwine, also contends that he understood that Wohl was representing BCM, Rossi and Phillips with respect to these issues and not the expert consultants.

Defendants have submitted affidavits from Rossi and Redwine stating their belief that Wohl was representing the interests of BCM and Rossi in dealing with the experts and in making inquiries into their bills and invoices. Defendants have also submitted a letter from Redwine to Wohl, dated December 18, 2001, asking Wohl to confirm that Redwine had "correctly stated the agreement with respect to FTI and DSFX." Def. Disqualification Memo Exh. B-2. Defendants have submitted no retainer agreements detailing the alleged representation by LSW of BCM, nor any invoices sent by LSW for the alleged representation.

Plaintiffs contend that at no point did LSW or Wohl represent BCM in its dispute with the insurance company. Plaintiffs have submitted a copy of the retainer agreement between LSW and Rossi, dated July 21, 2000 and signed by Rossi and a representative of BCM, providing in part that:

> Your employers, Basic Capital Management, Inc. ("BCM") and American Real-

ty Trust, Inc. ("ART") have agreed, jointly and severally, to pay the fees and expenses of our representation of you. You, BCM, and ART understand that, although these companies will be paying our fees and charges, you are our only client in this matter and we will not be acting as attorneys for BCM, ART, or any other related party in any respect. If BCM and ART become unwilling or unable to pay our bills, you understand that you will be obligated to pay them.

Wohl Partial Summary Judgment ("PSJ") Reply Aff. Exh. 1. Plaintiffs also note that the letters submitted by Defendants demonstrate that BCM had retained separate counsel to represent it in its dealings with its insurance company. The letters refer to "criminal counsel," demonstrating the limited scope of LSW's representation. Finally, Plaintiffs note that in LSW's correspondence with Rossi, LSW had sought payment on behalf of the expert consultants without being told by Defendants that it should not do so.

Plaintiffs have shown that the prior criminal representation of Rossi is not substantially related to the present fee collection litigation. When the "the only connection between this case and the plaintiff's prior representation is the matter of the allegedly unpaid fees," *Cooney & Bainer* 1995 WL 373951, at *4, a substantial relationship has not been demonstrated. Accordingly, disqualification may not be based on any alleged relation between those two matters.

Defendants have also failed to show that either Wohl or LSW represented BCM in its dispute with the insurance company over billing. Even if Wohl had intervened on BCM's behalf and contacted the insurance company in some manner, such conduct would be insufficient to create an attorney-client relation between Wohl and BCM in light of BCM's signed acknowl-

edgment that LSW would "not be acting as attorneys for BCM, ART, or any other related party in any respect." Whether or not Wohl knew of the disputes BCM was having with its insurance company may or may not be relevant to the Plaintiffs' motion for partial summary judgment, but such knowledge is not sufficient to transform either BCM, Rossi or Phillips into former clients with respect to the billing disputes. Accordingly, the alleged representation by Wohl and LSW of BCM in its dispute with its insurance company is also insufficient to disqualify Wohl.

■ In their reply brief, Defendants argue that Wohl should be disqualified pursuant to Disciplinary Rule DR 5–102(A)[2] because it is apparent that Wohl will be called as a witness in this litigation. The affidavit submitted by Wohl is proffered as evidence by Defendants that Wohl is "a directly knowledgeable, indeed, indispensable witness" to the dealings between BCM and its insurance company over reimbursement for Rossi's legal expenses.[3] Def. Reply Disqualification Mem. at 6.

If Wohl's testimony is required, it will be permitted under the exception as provided in DR 5–101(3). As a New York state court held in analogous circumstances,

[t]he question of the propriety of the plaintiffs' proceeding *pro se* herein is clearly within the purview of DR 5–101(B)(3). That section permits lawyer participation and testimony "(i)f the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client." Basically, that is the nature of the testimony that will be required from these plaintiffs, whether represented by others or by themselves, and the disciplinary rule specifically excepts that type of testimony from the category of reasons for disqualification. That these plaintiffs may have to fend off counterclaims raised by the defendant (failure to perform required services, legal malpractice, slander) is no valid argument for their disqualification.

*Spilky v. Hirsch*, 102 Misc.2d 536, 538, 425 N.Y.S.2d 934 (N.Y.Sup.App.Term 1980). In the present litigation, that Wohl may have to fend off claims that LSW's fees were unreasonable or that Defendants had registered objections to the fees is also no argument for disqualification. In a case where the defendants have contested the reasonableness of LSW's fees, "it would seem a hollow victory for ethics to invoke the disqualification rule here, where it would serve no other purpose than to run

---

**2.** Disciplinary Rule DR 5–102(A) provides as follows:

A lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client, except that the lawyer may act as an advocate and also testify:

1) If the testimony will relate solely to an uncontested issue.

2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the lawyer's firm to the client.

4) As to any matter, if disqualification as an advocate would work a substantial hardship on the client because of the distinctive value of the lawyer as counsel in the particular case.

**3.** Although Redwine, co-counsel for BCM and Rossi, has submitted an affidavit himself recounting his personal knowledge of his dealings with Wohl related to BCM's dispute with its insurance company, he has thus far not disqualified himself in the present litigation as a potential witness.

up legal bills ... while lawyers from [LSW] would be permitted to take the stand in any case." *Council for Nat'l Register of Health Service Providers in Psychology v. American Home Ass. Co.*, 632 F.Supp. 144, 148 (D.D.C.1985).

Accordingly, Defendants' motion to disqualify Wohl is denied.

### Plaintiffs Have Established an Account Stated As To All Charges

Rule 56(e) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gibbs–Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir.2002).

■ Plaintiffs argue for partial summary judgment on their application for attorneys' fees on the basis of an account stated.

Under federal and New York law, an account stated "refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due." *Ally & Gargano, Inc.*

*v. Comprehensive Accounting Corp.*, 615 F.Supp. 426, 429 (S.D.N.Y.1985) (quoting *Luckenbach S. S. Co. v. United States*, 189 F.Supp. 309, 311 (S.D.N.Y. 1960)); *see also Wayne County Vinegar & Cider Corp. v. Schorr's Famous Pickled Prod., Inc.*, 118 Misc.2d 52, 460 N.Y.S.2d 209, 213 (1983). It is incumbent upon a party in receipt of an account "to examine the statement and make all necessary objections" because "an agreement to pay an indebtedness may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable amount of time unless fraud, mistake or other equitable considerations are shown." *Kramer Levin Nessen, Kamin & Frankel v. Aronoff*, 638 F.Supp. 714, 719 (S.D.N.Y.1986) (citing *Rosenman Colin Freund Lewis & Cohen v. Neuman*, 93 A.D.2d 745, 461 N.Y.S.2d 297, 298–99 (1st Dep't.1983)). "An agreement to pay an indebtedness may also be implied if the debtor makes partial payment. The partial payment is considered acknowledgment of the validity of the account." *Kramer Levin*, 638 F.Supp. at 720 (citing *Parker, Chapin Flattau & Klimpl v. Daelen Corp.*, 59 A.D.2d 375, 378, 399 N.Y.S.2d 222, 224, (1st Dep't 1977)).

*Hackensack Cars, Inc. v. Lifestyle Limousine Service Corp.*, No. 87 Civ. 2764, 1990 WL 74885, at *4 (S.D.N.Y. May 25, 1990). "The receipt and retention of an account, without objection, within a reasonable period of time, coupled with an agreement to make partial payment, gives rise to an account stated entitling the moving party to summary judgment in its favor." *Morrison Cohen Singer & Weinstein, LLP v. Ackerman*, 280 A.D.2d 355, 356, 720 N.Y.S.2d 486 (1st Dep't 2001).

■ Plaintiffs argue that Defendants have presented no evidence that they ever

raised any objection, prior to filing answers in the present litigation, to the amount of any bill or to the quality of services provided by each plaintiff. Plaintiffs argue that evidence shows that Defendants acknowledged their obligations to pay for services rendered by Plaintiffs. Rossi and BCM have acknowledged that LSW "submitted invoices" and that "an account was stated between plaintiff LSW and defendants Rossi and BCM for the services rendered," and that "no part of the sum of $775,902.10 has been paid although the same has been duly and repeatedly demanded." Rossi and BCM Answer, ¶¶ 43, 45, 47. Rossi and BCM also admit that plaintiffs Decision Strategies, DecisionQuest, Lexecon, Thel and Hitscherich were retained to carry out work with the defendants Rossi and Phillips and that plaintiffs' services were provided for Rossi's and Phillips' benefit. *Id.* at ¶¶ 65, 66, 112, 113, 139, 142, 196, 199, 224, 227. Rossi and BCM also admit that they have not paid Decision Strategies and DecisionQuest. *Id.* at ¶¶ 71, 118. Rossi and BCM also admit that the work of Lexecon and Hitscherich was "performed in accordance with the ... retainer and provided defendants Rossi and Phillips with competent professional services." *Id.* at ¶¶ 145, 230.

Defendants reply that Wohl was aware of the dispute between BCM and its insurance company AISLIC as early as 2001. According to Defendants, AISLIC challenged over $300,000 of billings from Wohl and challenged the reasonableness and apportionment of billings from Decision Strategies, DecisionQuest and Lexecon. Wohl allegedly assisted BCM and Rossi in its dealings with AISLIC, and when these efforts failed, Wohl represented on the eve of the criminal trial that upon the conclusion of the trial he would review not only his billings but the billings of the expert consultants. Defendants also allege that Rossi and Phillips raised their own concerns regarding the fees and charges of LSW, Decision Strategies, DecisionQuest and Lexecon in December 2001 and January 2002, independent of the AISLIC dispute. The Defendants do not specify the nature of any objections made to Wohl that were independent of the dispute with AISLIC. Finally, Defendants argue that summary judgment is premature at this time as discovery has not been completed.

Any knowledge that Wohl may have had of the dispute between BCM and AISLIC is not sufficient to defeat summary judgment on the basis of an account stated. At most, the evidence put forward by the Defendants related to this dispute establishes that AISLIC objected to the fees, and not Rossi or BCM. Even objections by BCM would be insufficient to defeat summary judgment, as the retainer addressed to Rossi and signed by both Rossi and BCM acknowledges that if BCM becomes "unwilling or unable to pay our bills, you understand that you will be obligated to pay them." Wohl Reply Aff. Exh. 1.

The alleged objections made by Rossi and Phillips are conclusory and unsubstantiated, and do not provide any detail as to the nature of the objections. Such objections are insufficient to defeat summary judgment in light of the account stated established by Plaintiffs. *See Darby & Darby, P.C. v. VSI Int'l Inc.,* 95 N.Y.2d 308, 315, 716 N.Y.S.2d 378, 739 N.E.2d 744 (2000) (defendant's "self-serving, bald allegations of oral protests were insufficient to raise a triable issue of fact as to the existence of an account stated."); *Seward & Kissel v. Smith Wilson Co., Inc.,* 814 F.Supp. 370, 372 (S.D.N.Y.1993) (summary judgment granted where defendant voiced no objection in previous correspondence and claimed it had raised oral objections earlier); *Greenspan & Greenspan v. Wenger,* 294 A.D.2d 539, 742

N.Y.S.2d 875 (2d Dep't.2002); *Morrison Cohen Singer & Weinstein,* 280 A.D.2d at 356, 720 N.Y.S.2d 486; *Ruskin, Moscou, Evans & Faltischek, P.C. v. FGH Realty Corp.,* 228 A.D.2d 294, 295, 644 N.Y.S.2d 206 (1st Dep't 1996). Further discovery would not assist the determination of this motion, as Defendants themselves are best situated to provide documentation of any earlier objections, and have not done so.

 Defendants also argue that they did not receive all of the invoices on which Plaintiffs rely for their account stated claims, and in particular that they have not received an invoice reflecting the amount that Lexecon claims is due.[4] To support this contention, Defendants have submitted the affidavit of Jackie Vinson ("Vinson"), the Accounts Payable Supervisor at BCM, who is in charge of the records showing the invoices from the Plaintiffs, among others. Vinson has created a list of invoices she testifies were received by BCM; the list is missing a significant number of invoices that Plaintiffs have testified were sent. *See* Vinson Aff. ¶¶ 3–10.

Each plaintiff has submitted sworn affidavits attesting to the dates that particular invoices were sent out, and each has also provided copies of each invoice. Each invoice sent out by LSW, which also included invoices from the other plaintiffs, includes a cover letter which indicates that the invoice was sent via Federal Express. According to the Second Circuit,

> New York law holds that when, as here, there is proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed, a presumption arises that notice was received. The

mere denial of receipt does not rebut that presumption. There must be—in addition to denial of receipt—some proof that the regular office procedure was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable.

*Meckel v. Continental Resources Co.,* 758 F.2d 811, 817 (2d Cir.1985); *see also Saul, Ewing, Remick & Saul v. LaRosa,* 60 F.3d 824, 1995 WL 420012, at \*2 (4th Cir.1995) (holding, in summary judgment motion for accounts stated, that appellants' claim that invoices were not received is insufficient to overcome law firm's evidence that invoices and monthly reminders were sent); *S.E.C. v. Batterman,* No. 00 Civ. 4835, 2002 WL 31190171, at \*6 (S.D.N.Y. Sept. 30, 2002) (denial of receipt of documents insufficient to overcome presumption of receipt in light of declaration and Federal Express receipts). Defendants have provided no evidence to overcome the presumption that BCM received the invoices. Further, Defendants made no objection to the non-receipt of the invoices before this litigation commenced, despite Plaintiffs' repeated demands for payment. The Defendants' denial of receipt is therefore insufficient to defeat summary judgment as to the charges on those invoices.

### Conclusion

For the foregoing reasons, the Defendants' motion to disqualify Wohl is denied, and the Plaintiffs' motion for partial summary judgment is granted.

It is so ordered.

---

4. Defendants also claim that BCM has received no invoices showing the application of the $10,000 retainer paid to Thel. However, Plaintiffs have provided evidence showing that the invoice showing the application of the Thel retainer was mailed with invoice number 12411 from LSW, which defendants have acknowledged receiving.