IRENE JOHNSON, as Administratrix of the Estate of JOHN
S. JOHNSON, Deceased, Respondent, *v.* FREDERICK
LUTZ et al., Copartners under the Firm Name of CHAS.
LUTZ & SONS, Appellants.

(Argued January 17, 1930; decided February 11, 1930.)

*E. J. Dimock* and *B. L. Visscher* for appellants. The policeman's report fulfilled the requirements for admissibility laid down in section 374-a of the Civil Practice Act. (*Mayor* v. *Second Ave. R. R. Co.*, 102 N. Y. 572.) The facts stated in the policeman's report were competent evidence. (*Hallahan* v. *N. Y., L. E. & W. R. R. Co.*, 102 N. Y. 194.)

*Joseph Danziger* and *Leon Starr* for respondent. The intent of section 374-a is to permit the introduction in evidence of records made in the usual course of business without the necessity of producing all the witnesses who participated in the making thereof, provided the final entry was the result of information imparted by the individuals as part of a duty, not voluntarily or casually. The police report does not meet the latter requirement and was properly excluded. (*Mayor* v. *Second Ave. R. R. Co.*, 102 N. Y. 572; *Psola* v. *Long Island R. R. Co.*, 246 N. Y. 388; Richardson, Outlines of Evidence, p. 174; *Chesapeake & Ohio Ry. Co.* v. *Stojanowski*, 191 Fed. Rep. 720.) The exclusion of the police report was proper, and even if erroneous, does not constitute reversible error. (*Hallahan* v. *N. Y., L. E. & W. R. R. Co.*, 102 N. Y. 194; *Cooper* v. *Wait*, 8 Wkly. Dig. 367.)

HUBBS, J. This action is to recover damages for the wrongful death of the plaintiff's intestate, who was killed when his motorcycle came into collision with the defendants' truck at a street intersection. There was a sharp conflict in the testimony in regard to the circumstances under which the collision took place. A policeman's report of the accident filed by him in the station house was offered in evidence by the defendants under section 374-a of the Civil Practice Act and was excluded. The sole ground for reversal urged by the appellants is that said report was erroneously excluded. That section

reads: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of said act, transaction, occurrence or event, if the trial judge shall find that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term business shall include business, profession, occupation and calling of every kind."

Prior to the decision in the well-known case of *Vosburgh* v. *Thayer* (12 Johns. 461), decided in 1815, shopbooks could not be introduced in evidence to prove an account. The decision in that case established that they were admissible where preliminary proof could be made that there were regular dealings between the parties, that the plaintiff kept honest and fair books, that some of the articles charged had been delivered, and that the plaintiff kept no clerk. At that time it might not have been a hardship to require a shopkeeper who sued to recover an account to furnish the preliminary proof required by that decision. Business was transacted in a comparatively small way, with few if any clerks. Since the decision in that case, it has remained the substantial basis of all decisions upon the question in this jurisdiction prior to the enactment in 1928 of section 374-a, Civil Practice Act.

Under modern conditions the limitations upon the right to use books of account, memoranda or records made in the regular course of business, often resulted in a denial of justice, and usually in annoyance, expense and waste of time and energy. A rule of evidence that was practical a century ago had become obsolete. The situation was

appreciated and attention was called to it by the courts and text writers. (Woods Practice Evidence [2d ed.], 377; 3 Wigmore on Evidence [1923], § 1530.)

The report of the Legal Research Committee of the Commonwealth Fund, published in 1927, by the Yale University Press, under the title " The Law of Evidence — Some Proposals for Its Reform," dealt with the question in chapter 5 under the heading " Proof of Business Transactions to Harmonize with Current Business Practice." That report, based upon extensive research, pointed out the confusion existing in decisions in different jurisdictions. It explained and illustrated the great need of a more practical, workable and uniform rule, adapted to modern business conditions and practices. The chapter is devoted to a discussion of the pressing need of a rule of evidence which would " give evidential credit to the books upon which the mercantile and industrial world relies in the conduct of business." At the close of the chapter the committee proposed a statute to be enacted in all jurisdictions. In compliance with such proposal the Legislature enacted section 374-a of the Civil Practice Act in the very words used by the committee.

It is apparent that the Legislature enacted section 374-a to carry out the purpose announced in the report of the committee. That purpose was to secure the enactment of a statute which would afford a more workable rule of evidence in the proof of business transactions under existing business conditions.

In view of the history of section 374-a and the purpose for which it was enacted, it is apparent that it was never intended to apply to a situation like that in the case at bar. The memorandum in question was not made in the regular course of any business, profession, occupation or calling. The policeman who made it was not present at the time of the accident. The memorandum was made from hearsay statements of third persons who happened to be present at the scene of the accident when

he arrived. It does not appear whether they saw the accident and stated to him what they knew, or stated what some other persons had told them.

The purpose of the Legislature in enacting section 374-a was to permit a writing or record, made in the regular course of business, to be received in evidence without the necessity of calling as witnesses all of the persons who had any part in making it, provided the record was made as a part of the duty of the person making it, or on information imparted by persons who were under a duty to impart such information. The amendment permits the introduction of shopbooks without the necessity of calling all clerks who may have sold different items of account. It was not intended to permit the receipt in evidence of entries based upon voluntary hearsay statements made by third parties not engaged in the business or under any duty in relation thereto. It was said in *Mayor, etc., v. Second Ave. R. R. Co.* (102 N. Y. 572, at p. 581): "It is a proper qualification of the rule admitting such evidence, that the account must have been made in the ordinary course of business, and that it should not be extended so as to admit a mere private memorandum, not made in pursuance of any duty owing by the person making it, or when made upon information derived from another who made the communication casually and voluntarily, and not under the sanction of duty or other obligation."

An important consideration leading to the amendment was the fact that in the business world credit is given to records made in the course of business by persons who are engaged in the business upon information given by others engaged in the same business as part of their duty.

"Such entries are dealt with in that way in the most important undertakings of mercantile and industrial life. They are the ultimate basis of calculation, investment, and general confidence in every business enterprise. Nor does the practical impossibility of obtaining con-

stantly and permanently the verification of every employee affect the trust that is given to such books. It would seem that expedients which the entire commercial world recognizes as safe could be sanctioned, and not discredited, by Courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly be one rule for the business world and another for the court-room. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who as attorneys have already employed and relied upon the same methods. In short, Courts must here cease to be pedantic and endeavor to be practical." (3 Wigmore on Evidence [1923], § 1530, p. 278.)

The Legislature has sought by the amendment to make the courts practical. It would be unfortunate not to give the amendment a construction which will enable it to cure the evil complained of and accomplish the purpose for which it was enacted. In construing it we should not, however, permit it to be applied in a case for which it was never intended.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment affirmed.