William C. Hecht, Jr., J.
The city offered in evidence 37 documents bearing Exhibits Nos. 251-A through 251-AK. These documents have been received in evidence over claimants’ objection but subject to their motion to strike after the court had an opportunity to examine them. The documents purport to be 11 field reports” prepared by one Nelson, a sales and service representative of General Motors, and transmitted by him to his superiors at Pontiac, Michigan.
Most of the buses owned by claimants were purchased from General Motors. It was Nelson’s duty to acquaint himself with the maintenance practices of claimants’ properties; to advise mechanics employed by claimants as to proper maintenance procedures for General Motors’ buses. It was also Nelson’s task to investigate and report on the performance of General Motors’ buses in'order to ascertain if they were functioning satisfactorily andi if claims of malfunctioning on the General Motors’ warranty] were justified.
The “ field reports ” discussed the maintenance procedures of claimants and their personal problems, with special reference to the “ palace ” politics resulting from the take-over of Surface by Fifth and the friction in labor relations. The thrust of the reports is designed to show that any fault in performance of the motors was not attributable to General Motors, but to poor management and improper maintenance procedures on the part of claimants; and that in fact General Motors’ buses were performing better than the Mack buses which claimants operated. Nelson’s reports were based on (a) his own observations; and (b) the criticisms of claimants expressed to him by claimants’ employees.
The city offers these reports as competent evidence of poor management on the part of claimants in order to minimize the contention that claimants’ business had a going-concern value for which compensation should be made. The offer is sought to be justified by subdivision (a) of rule 4518 of the Civil Practice Law and Rules which provides: ‘ ‘ Any writing or *321 record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of the making of the memorandum or record, including lack of personal knowledge by the maker, may be proved to affect its weight, but they shall not affect its admissibility. The term business includes a business, profession, occupation and calling of every kind.”
This rule is a re-enactment of section 374-a of the Civil Practice Act.
The purpose of that statute was to eliminate the necessity of calling a large number of employees who participated in making entries in the business records. “It rests upon the probability of trustworthiness which inheres in such records, by virtue of the fact, first, that they are the ‘ routine reflections of the day to day operations of a business ’ * * * and, second, that it is the entrant’s own obligation, and to his interest, to have them truthful and accurate, made and kept as they are with the knowledge, indeed, for the purpose, that they will be relied upon in the conduct of the enterprise.” (Fuld, J., Williams v. Alexander, 309 N. Y. 283, 286; citations omitted.)
As was said by Learned Hand in Massachusetts Bonding & Ins. Co. v. Norwich Pharmacol Co. (18 F. 2d 934, 937 [C. 0. A. 2d]): “ The routine of modern affairs, mercantile, financial and industrial, is conducted with so extreme a division of labor that the transactions cannot be proved at first hand without the concurrence of persons, each of whom can contribute no more than a slight part, and that part not dependent on his memory of the event. Records, and records alone, are their adequate repository, and are in practice accepted as accurate upon the faith of the routine itself, and of the self-consistency of their contents. Unless they can be used in court without the task of calling those who at all stages had a part in the transactions recorded, nobody need ever pay a debt if only his creditor does a large enough business.”
However, the rule does not permit the admission of statements made to Nelson by claimants’ employees. In Johnson v. Luts (253 N. Y. 124) the court excluded a policeman’s report of an accident, saying, per Hubbs, J. (pp. 127-128):
*322 “ In view of the history of section 374-a and the purpose for which it was enacted, it is apparent that it was never intended to apply to a situation like that in the case at bar. The memorandum in question was not made in the regular course of any business, profession, occupation or calling. The policeman who made it was not present at the time of the accident. The memorandum was made from hearsay statements of third persons who happened to be present at the .scene of the accident when he arrived * * *.
“ The purpose of the Legislature in enacting section 374-a was to permit a writing or record, made in the regular course of business, to be received in evidence without the necessity of calling as witnesses all of the persons who had any part in making it, provided the record was made as a part of the duty of the person making it, or on information imparted by persons who were under a duty to impart such information. The amendment permits the introduction of shopbooks without the necessity of calling all clerks who may have sold different items of account. It was not intended to permit the receipt in evidence of entries based upon voluntary hearsay statements made by third parties not engaged in the business or under any duty in relation thereto.”
This principle was repeated with approval in Cox v. State of New York (3 N Y 2d 693, 699).
Nelson’s own observations are equally incompetent. Palmer v. Hoffman (318 U. S. 109) was an action for wrongful death and personal injury in a grade crossing accident. Defendant railroad offered in evidence a statement of the engineer of the train (since deceased), made at a freight office where he was interviewed by an assistant superintendent of the railroad and by a representative of the Massachusetts Public Utilities Commission. This statement was excluded.
The former Federal statute embodying this rule (U. S. Code, tit. 28, § 695 [now U. S. Code, tit. 28, § 1732]) is identical with our subdivision (a) of rule 4518 of the Civil Practice Law and Buies. In affirming a judgment for plaintiff and ruling that the foregoing statute did not permit introduction of the engineer’s statement, the court said, per Douglas, J. (pp. 111-114):
‘ But we do not think that it was made ‘ in the regular course ’ of business within the meaning of the Act. The business of the petitioners is the railroad business. That business like other enterprises entails the keeping of numerous books and records essential to its conduct or useful in its efficient operation. Though such books and records were considered reliable *323 and trustworthy for major decisions in the industrial and business world, their use in litigation was greatly circumscribed or hedged about by the hearsay rule — restrictions which greatly increased the time and cost of making the proof where those who made the records were numerous. 5 Wigmore, Evidence (3d ed., 1940) § 1530. It was that problem which started the movement towards adoption of legislation embodying the principles of the present Act. * * *
“ The engineer’s statement which was held inadmissible in this case falls into quite a different category. It is not a record made for the systematic conduct of the business as a business. An accident report may affect that business in the sense that it affords information on which the management may act. It is not, however, typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls. The conduct of a business commonly entails the payment of tort claims incurred by the negligence of its employees. But the fact that a company makes a business out of recording its employees’ versions of their accidents does not put those statements in the class of records made ‘ in the regular course ’ of the business within the meaning of the Act. If it did, then any law office in the land could follow the same course, since business as defined in the Act includes the professions. We would then have a real perversion of a rule designed to facilitate admission of records which experience has shown to be quite trustworthy.
“ Any business by installing a regular system for recording and preserving its version of accidents for which it was potentially liable could qualify those reports under the Act. The result Avould be that the Act would cover any system of recording events or occurrences provided it was ‘ regular ’ and though it had little or nothing to do with the management or operation of the business as such. Preparation of cases for trial by virtue of being a 1 business ’ or incidental thereto would obtain the benefits of this liberalized version of the early shop book rule. The probability of trustworthiness of records because they were routine reflections of the day to day operations of a business would be forgotten as the basis of the rule. See Conner v. Seattle, R. & S. Ry. Co., 56 Wash. 310, 312-313, 105 P. 634. Regularity of preparation would become the test rather than the character of the records and their earmarks of reliability (Chesapeake & Delaware Canal Co. v. United States, 250 U. S. 123, 128-129) acquired from their source and origin and the. nature of their compilation. We cannot so completely empty *324 the words of the Act of their historic meaning. * * * Such a major change which opens wide the door to avoidance of cross-examination should not be left to implication. Nor is it any answer to say that Congress has provided in the Act that the various circumstances of the making of the record should affect its weight, not its admissibility. That provision comes into play only in case the other requirements of the Act are met.
‘ ‘ In short, it is manifest that in this case those reports are not for the systematic conduct of the enterprise as a railroad business. Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like, these reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading ” (footnotes omitted).
Under subdivision (a) of rule 43 of the Federal Rules of Civil Procedure, it is provided that the Federal court must apply either the State or Federal rule on admissibility, whichever is more liberal (Mattox v. News Syndicate Co., 176 F. 2d 897, 901 [2d Cir.], cert. den. 338 U. S. 858). Since Palmer was tried in the Eastern District of New York, the foregoing opinion stands as an authoritative interpretation of our own shop book statute.
In People v. Samuels (302 N. Y. 163) the court reversed a conviction of murder because the trial court had improperly admitted certain records designed to combat the defense of insanity. The court said, per Froessel, J. (pp. 170-171):
“ Defendant contends that the trial court erred in admitting as part of the Bellevue Hospital records (1) a memorandum made by a social service investigator to the effect that the investigator had ‘ contacted ’, at the place where defendant was said to have been formerly employed, one Fuesner, who had stated that defendant ‘ showed no abnormal traits (2) a letter sent by the assistant district attorney, who prosecuted defendant, to Dr. Herman of Bellevue under date of June 12, 1948, suggesting that a 6 careful watch ’ be kept on defendant when he has visitors, because his sister had been employed taking care of mentally disturbed persons, and Dr. Lichtenstein believed that ‘ .she; may possibly inculcate certain ideas in her brother’s mind with a view towards planning an insanity defense ’; (3) a memorandum which Dr. Lichtenstein had prepared for the assistant district attorney recording his conclusions as to defendant’s mental condition * * *.
* ‘ At least some of these documents should in no event have been admitted as part of the hospital record, as, e.g., (1) the social service memorandum, (2) the letter sent by the assistant *325 district attorney, and (3) Dr. Lichtenstein’s memorandum. It is not the business of a hospital to record (1) the opinion of some layman, whom an investigator ‘ contacted ’, as to the ‘ traits ’ of a patient, where the informant was under no duty to impart that information; nor (2) the unsolicited opinion of an assistant district attorney that a 1 careful watch ’ should be placed over the patient, a warning not even related to defendant’s mental condition, but directed rather to possible action by his sister, or (3) the opinion of the District Attorney’s medical assistant in charge of legal medicine and psychiatry, made, not to the hospital, but to an assistant district attorney, giving his conclusions as to defendant’s mental condition. None of these documents comes within the purview of the statute; it was not1 the regular course of such business [the hospital’s] to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter.’ (Civ. Prac. Act, § 374-a; Code Crim. Pro., § 392; People v. Kohlmeyer, 284 N. Y. 366, 369; Johnson v. Lutz, 253 N. Y. 124; Roberto v. Nielson, 288 N. Y. 581; see, also, Palmer v. Hoffman, 318 U. S. 109, rehearing denied 318 U. S. 800, and Del Re v. City of New York, 180 Misc. 525.) ” (Italics in original.)
In Williams v. Alexander (309 N. Y. 283, supra) the court held that it was improper to admit in evidence a hospital record containing a statement by plaintiff as to the manner in which the accident had happened. The court said, per Ftjld, J. (pp. 286-287): “ The statute, similar to those in effect in most jurisdictions, is designed to harmonize the rules of evidence with modern business practice and give 1 evidential credit ’ to the memoranda or other writings upon which reliance is placed in the systematic conduct of business undertakings. (See Johnson v. Lutz, 253 N. Y. 124, 127.) It rests upon the probability of trustworthiness which inheres in such records, by virtue of the fact, first, that they are the ‘ routine reflections of the day to day operations of a business ’ (Palmer v. Hoffman, 318 U. S. 109, 114) and, second, that it is the entrant’s own obligation, and to his interest, to have them truthful and accurate, made and kept as they are with the knowledge, indeed, for the purpose, that they will be relied upon in the conduct of the enterprise. (See Johnson v. Lutz, supra, 253 N. Y. 124, 128; Weis v. Weis, 147 Ohio St. 416, 425; see, also, 5 Wigmore on Evidence [3d ed., 1940], § 1522, p. 369; McCormick on Evidence [1954], § 281, pp. 596-597.) It is this element of trustworthiness, serving in place of the safeguards ordinarily *326 afforded by confrohtation and cross-examination, which justifies admission of the ¡writing or record without the necessity of calling all the persons who may have had a hand in preparing it. And it was to assure such accuracy and reliability that the legislature made explicit the condition that the memorandum may be received in evidence — and this is the heart of the provision — only if it was ‘ made in the regular course of [the] business, and * * * it was the regular course of such business to make such memorandum
The cases relied on by the city to distinguish Palmer v. Hoffman do not apply to the case at bar.
In Pehelis v. Transcontinental & Western Air (187 F. 2d 122 [2d Cir.]) the reports were held admissible against the airline because they were made by its own board of inquiry on the established fault on its part, thus qualifying as admissions against interest. The court said, per A. N. Hand, J. (p. 130): “ The reports in tlhe case at bar were against the interest of the entrant when made, since they charged serious fault on the part of employees Both and Langsdale, and whether or not completely accurate were clearly not part of the story cooked up in advance of litigation in the disguise of business records. Moreover, it is not the entrant who here sought to introduce the reports, but the plaintiff, and this too tends to show that they were not contrived by the entrant for litigation. Palmer v. Hoffman was given the above interpretation by this court in United States v. Moran, 151 F. 2d 661, 662 * * * and Lopoczyk v. Chester A. Poling, Inc., 152 F. 2d 457, 460, note 4. We hold that Palmer v. Hoffman did not preclude the reception under the business entry statute of the reports offered in the case at bar.”
Similarly, in United States v. New Yorh Foreign Trade Zone Operators (304 F. 2d 792 [2d Cir.]) the report was made by Gordon (a government employee) pursuant to the requirements of the Federal Employees’ Compensation Act (U. S. Code, tit. 5, § 751), in support of a claim by Gordon’s subordinate against the Government. Palmer v. Hoffman was distinguished on that ground (p. 797). There was an important additional factor there, which was thus described by Judge Waterman {ibid.): “ Moreover, the purpose behind the Federal Business Records Act is to permit the introduction into evidence of reports in substitution for the actual testimony in court of the persons making the reports. See 5 Wigmore [Evidence (3d ed.), 1940)], § 1631. Here, Gordon, the maker of the report, was on the stand and testified in person. After the report was admitted into evidence government counsel did not further interrogate *327 Gordon, and the witness did not testify to the content of what he had reported. However, he was available and subject to cross-examination. His credibility and the trustworthiness of his report could have been inquired into. Of course, in view of what happened later defense counsel was trial-wise in not taking advantage of this opportunity but nevertheless the opportunity was present. Therefore, the trial posture of this case was quite dissimilar from the trial posture of those cases where the report is sought to be introduced independently without a witness-stand identification of it by its actual maker.”
While the foregoing is sufficient to indicate the incompetency of Nelson’s own reports, there is an additional reason which makes them inadmissible. The statute refers to “a memorandum or record of any act, transaction, occurrence or event (CPLR 4518, subd. [a].) Nelson’s reports are sought to be used by the city as expressions of an expert opinion derogatory to claimants’ maintenance policies and procedures. If Nelson testified personally, he would not be allowed to express the conclusions stated in his reports without being subject to complete cross-examination as to his experience and as to the facts on which he based his conclusions.
This would apply to the attempted use of his reports. As was said by Judge Fkoessel, speaking for the court, in People v. Samuels (302 N. Y. 163,172, supra): “ The underlying assumption of virtually all the cases dealing with expert testimony is that the jury must have the facts upon which the expert bases his opinion in order to evaluate the worth of that opinion (People v. Strait, 148 N. Y. 566, 570; People v. Nino, 149 N. Y. 317, 326-327; People v. Truck, 170 N. Y. 203, 212, 216; People v. Faber, 199 N. Y. 256, 267; People v. Keough, 276 N. Y. 141, 145-146; Cobb v. United Engineering & Contr. Co., 191 N. Y. 475, 482, motion for re argument denied 192 N. Y. 549; see, also, Link v. Sheldon, 136 N. Y. 1, 9; People v. McElvaine, 121 N. Y. 250; Marx v. Ontario Beach Hotel & Amusement Co., 211 N. Y. 33, 38). As we said in People v. Strait (supra, p. 570): ‘ The witness was an expert on the diseases of the mind, but he was not an expert on determining the facts, where such facts had to be obtained from the statements of others. It was essential that the jury should be informed as to the facts upon which the expert based his conclusions in order to determine whether they were well founded. If the facts were not disclosed, his conclusions could not be controverted.’ ”
In Korte v. New York, New Haven & Hartford R. R. Co. (191 F. 2d 86, 91 [2d Cir.]); in Tucker v. Loew’s Theatre & Realty Corp. (149 F. 2d 677, 680 [2d Cir.]); in Moran v. Pitts *328 burgh-Des Moines Steel Co. (183 F. 2d 467, 473 [3d Cir.]), and in other cases cited by the city, records made by experts in the course of their business were held admissible. Without expressing an opiiiion as to whether these holdings are in conflict with People v. Samuels {supra) it is sufficient to note that in all of those cases it was clear that the expert was entirely disinterested. They have no application here, where Nelson was obviously interested in safeguarding the reputation of his employer General Motors, regardless of whether it mig’ht be subject to litigation for breach of warranty.
Claimants’ motion to strike is granted.