Pillco v 160 Dikeman St., LLC (2025 NY Slip Op 04495)

Pillco v 160 Dikeman St., LLC

2025 NY Slip Op 04495

Decided on July 30, 2025

Appellate Division, Second Department

Connolly, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 30, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
BARRY E. WARHIT
JANICE A. TAYLOR
DONNA-MARIE E. GOLIA, JJ.

2023-04040
 (Index No. 524963/19)

[*1]Fabian Pillco, appellant, 
v
160 Dikeman Street, LLC, defendant-respondent, KSK Construction Group, LLC, defendant third-party plaintiff-respondent; ATA Construction New York, Inc., third-party defendant-respondent.

APPEAL by the plaintiff, in an action to recover damages for personal injuries, from an undated order of the Supreme Court (Robin K. Sheares, J.), entered in Kings County. The order denied the plaintiff's motion for summary judgment on the issue of liability on the causes of action alleging a violation of Labor Law § 240(1).

Ginarte Gonzalez Winograd LLP, New York, NY (Anthony F. DeStefano of counsel), for appellant.
Gorton & Gorton LLP, Garden City, NY (John T. Gorton of counsel), for third-party defendant-respondent.

CONNOLLY, J.P.

OPINION & ORDER
The key issue presented by this appeal is whether a certain statement appearing in the plaintiff's medical records was properly considered under the business records exception to the hearsay rule to defeat the plaintiff's motion for summary judgment. We hold that the challenged statement was germane to the plaintiff's medical diagnosis and treatment and, therefore, was admissible under the business records exception.
Approximately 70 years ago in Williams v Alexander (309 NY 283), the Court of Appeals determined that entries in a hospital record may be admitted into evidence under the business records hearsay exception if they are germane to diagnosis and treatment. Nevertheless, since then, courts and members of the bar have continued to grapple with the circumstances under which entries in hospital and medical records may be admissible. One of the most common and confusing issues relates to the admissibility of hearsay statements, contained within the medical records, regarding how the patient was injured. We take the opportunity to provide guidance on this issue.
I. Factual and Procedural History
On September 25, 2019, the plaintiff was employed as a laborer by the third-party defendant, ATA Construction New York, Inc. (hereinafter ATA), when he allegedly was injured at a construction site located at 160 Dikeman Street in Brooklyn, which was owned by the defendant 160 Dikeman Street, LLC (hereinafter 160 Dikeman). The defendant third-party plaintiff, KSK Construction Group, LLC (hereinafter KSK), was the general contractor for the construction project and entered into a subcontract with ATA for ATA to perform work related to ceilings, drywalls, [*2]carpentry, paint, and tile installation.
In November 2019, the plaintiff commenced this action against 160 Dikeman and KSK to recover damages for personal injuries, alleging, among other things, a violation of Labor Law § 240(1). In June 2020, KSK commenced a third-party action against ATA, inter alia, for contractual indemnification (see Pillco v 160 Dikeman St., LLC, 232 AD3d 918).
Thereafter, the plaintiff moved for summary judgment on the issue of liability on the causes of action alleging a violation of Labor Law § 240(1). In support of his motion, the plaintiff submitted, among other things, transcripts of his deposition testimony wherein he testified with the aid of a Spanish language interpreter. The plaintiff testified that on September 24, 2019, the day before the accident, his supervisor, "Billy," instructed him to demolish a sheetrock ceiling that had been improperly installed. According to the plaintiff, he first used a scaffold, and with the assistance of another laborer, he removed the sheetrock from the ceiling. However, according to the plaintiff, on September 25, 2019, the day of the accident, he was working alone and "Billy" instructed him to use an A-frame ladder because he was working too slowly. The plaintiff testified that as he was removing a piece of sheetrock from the first-floor ceiling, the sheetrock, which weighed approximately 20 pounds, detached from the ceiling and fell on his right shoulder, which caused the ladder to shake. He further testified that he fell off the ladder, approximately seven feet, and landed on his back with the ladder and sheetrock on top of him. According to the plaintiff, after he fell, he tried to get up, "Billy" and a KSK engineer came toward him, and "Billy" asked him what happened. The plaintiff testified that he was treated at Elmhurst Hospital on the same day as the accident, and, upon referral by his lawyer, the plaintiff was treated at Precision Pain Medicine (hereinafter Precision Pain) shortly thereafter.
The plaintiff also submitted a transcript of the deposition testimony of Bulent Yalcin, who testified that he was a co-owner of ATA and that the workers referred to him as "Billy." Among other things, Yalcin testified that ATA was performing painting work, not demolition or sheetrock work, and the plaintiff was not supposed to be removing sheetrock. However, Yalcin also testified that he did not remember exactly what work the plaintiff was performing. Yalcin testifed that he was not at the site at the time of the plaintiff's alleged accident and that the plaintiff called him either the night of the alleged accident or the following day to tell him that he had been injured "pulling some [s]heetrock" and had "dropped something."
ATA opposed the plaintiff's motion, contending that it raised triable issues of fact as to the plaintiff's credibility and whether the accident occurred in the manner alleged by the plaintiff. ATA submitted an affidavit from Yalcin, who averred, among other things, that on September 24, 2019, he did not tell the plaintiff to remove sheetrock from the first-floor ceiling. He further averred that on September 25, 2019, ATA was doing sanding and painting work, not demolition work, he never saw the plaintiff remove sheetrock from the first-floor ceiling, he never saw the plaintiff using a scaffold to remove sheetrock from the first-floor ceiling, and he never ordered the plaintiff to stop using a scaffold and instead use an A-frame ladder to remove sheetrock from the first-floor ceiling. Nevertheless, Yalcin acknowledged that he was not present at the site when the plaintiff's accident allegedly occurred. He also denied that he and a KSK engineer approached the plaintiff on site after the accident and asked what had happened.
In addition to Yalcin's affidavit, ATA submitted a copy of the plaintiff's Precision Pain medical records, which were certified by Precision Pain's custodian of records. The records indicated that the plaintiff visited Precision Pain on October 3, 2019, and was examined by Dr. Daniel Khaimov. The first page of the Precision Pain medical records contains, among other things, the following statement: "Accident: Patient was on a ladder, was picking up heavy [sheetrock] and felt a pull on his lower back and R shoulder." On the third and fourth pages, the following three statements appear:
"Incident patient described the competent medical cause of this injury? YES.
"Are the patient's complaints consistent with his/her history of injury? YES.
"Is the patient's history of the injury consistent with my objective findings? YES."
In an undated order, the Supreme Court denied the plaintiff's motion for summary judgment on the issue of liability on the causes of action alleging a violation of Labor Law § 240(1). The plaintiff appeals. We affirm.
II. The Plaintiff's Prima Facie Burden
"'Labor Law § 240(1) imposes upon owners and general contractors, and their agents, a nondelegable duty to provide safety devices necessary to protect workers from risks inherent in elevated work sites'" (Rivas v Purvis Holdings, LLC, 222 AD3d 676, 677, quoting McCarthy v Turner Constr., Inc., 17 NY3d 369, 374). "Labor Law § 240(1) applies to both falling worker and falling object cases" (Castano v Algonquin Gas Transmission, LLC, 213 AD3d 905, 907 [internal quotation marks omitted]; see Narducci v Manhasset Bay Assoc., 96 NY2d 259, 267). "'To prevail on a Labor Law § 240(1) cause of action, a plaintiff must establish that the statute was violated and that the violation proximately caused his or her injuries'" (Rivas v Purvis Holdings, LLC, 222 AD3d at 677, quoting Orellana v 7 W. 34th St., LLC, 173 AD3d 886, 887; see Robinson v East Med. Ctr., LP, 6 NY3d 550, 554).
There is no dispute on this appeal that the evidence submitted in support of the plaintiff's motion for summary judgment was sufficient to establish his prima facie entitlement to judgment as a matter of law on the issue of liability on the causes of action alleging a violation of Labor Law § 240(1) (see Cahill v Triborough Bridge & Tunnel Auth., 4 NY3d 35, 39; Heras v Ming Seng & Assoc., LLC, 203 AD3d 1146, 1147). Nevertheless, the plaintiff and ATA dispute whether in opposition, ATA raised a triable issue of fact through the submission of Yalcin's affidavit and/or the certified Precision Pain medical records.
III. Yalcin's Affidavit
The plaintiff contends that Yalcin's affidavit could not have raised a triable issue of fact as to how the accident occurred because Yalcin did not witness the accident and had no personal knowledge of the accident. By contrast, ATA contends that Yalcin's affidavit raised a triable issue of fact as to the plaintiff's credibility. According to ATA, because Yalcin disputed, among other things, that he directed the plaintiff to remove sheetrock and to use an A-frame ladder instead of a scaffold, Yalcin's affidavit raised a triable issue of fact as to the plaintiff's credibility on his entire version of how the unwitnessed accident allegedly occurred.
Initially, as the plaintiff correctly contends, the fact that the plaintiff was the sole witness to the accident does not preclude an award of summary judgment in his favor (see Klein v City of New York, 89 NY2d 833, 834-835; Medina v 1277 Holdings, LLC, 234 AD3d 839, 842; Melchor v Singh, 90 AD3d 866, 869). However, "[w]here a plaintiff is the sole witness to the accident and his or her credibility has been placed in issue, the granting of summary judgment on the issue of liability in favor of the plaintiff on a Labor Law § 240(1) cause of action is inappropriate" (Alvarez v 2455 8 Ave, LLC, 202 AD3d 724, 725; see Woszczyna v BJW Assoc., 31 AD3d 754, 755).
We agree with the plaintiff that Yalcin's affidavit was insufficient to place the plaintiff's credibility at issue as to how the accident occurred. Yalcin averred that he was not at the site prior to the accident and he was not a witness to the accident. As such, he did not have personal knowledge of how the accident itself did or did not occur (see Rom v Eurostruct, Inc., 158 AD3d 570; Marrero v 2075 Holding Co. LLC, 106 AD3d 408, 409; Madalinski v Structure-Tone, Inc., 47 AD3d 687, 688). Moreover, there was nothing in the affidavit to raise triable issues of fact as to whether one of the pieces of sheetrock fell from the ceiling, whether the ladder the plaintiff allegedly was using moved, or whether the plaintiff fell from it (see Melchor v Singh, 90 AD3d at 869; Madalinski v Structure-Tone, Inc., 47 AD3d at 688). Nor did Yalcin's affidavit call into question whether the accident could have physically occurred in the manner described by the plaintiff at his deposition (see Passos v Noble Constr. Group, LLC, 169 AD3d 706, 708; cf. Ellerbe v Port Auth. of N.Y. & N.J., 91 AD3d 441, 442 [site safety manager testified that he inspected and climbed the ladder immediately after the plaintiff's fall and, in an affidavit, averred that based upon his inspection of the ladder, the accident could not have happened as the plaintiff claimed]).
As to Yalcin's denial that the plaintiff told him and a KSK engineer that he fell off of an A-frame ladder, that also did not raise a triable issue of fact. Under certain circumstances, where the plaintiff provides inconsistent versions of how the accident occurred, those inconsistent versions may raise a triable issue of fact as to the plaintiff's credibility (see e.g. Lewis v 96 Wythe Acquisition LLC, 204 AD3d 470, 471; Giannas v 100 3rd Ave. Corp., 166 AD3d 853, 855; Hobbs v MTA Capital Constr., 159 AD3d 544; Delahaye v Saint Anns School, 40 AD3d 679, 682). In his affidavit, however, Yalcin did not aver that the plaintiff told him an inconsistent version of how the accident occurred. Yalcin's denial that any conversation occurred is not equivalent.
Further, when Yalcin's affidavit is considered in conjunction with his deposition [*3]testimony, Yalcin did not deny that he ever had a conversation with the plaintiff in which the plaintiff told him about the alleged accident. Instead, Yalcin denied that such a conversation occurred on site after the accident in the presence of a KSK engineer. However, under the circumstances of this case, it is not material whether that alleged conversation took place at the site of the accident, as the plaintiff testified, or later that day or the next day on the phone, as Yalcin testified at his deposition (see generally Fox v H & M Hennes & Mauritz, L.P., 83 AD3d 889, 891). Under the circumstances of this case, it is also not material whether the KSK engineer was present for the conversation or not (see generally id.).
To the extent that Yalcin's affidavit raised issues of fact as to why the plaintiff was on an A-frame ladder removing sheetrock, that also did not raise an issue of material fact under the circumstances of this case. On this appeal, ATA does not argue that the plaintiff was performing unauthorized work (see e.g. Yaguachi v Park City 3 & 4 Apts.,Inc., 185 AD3d 635, 636) or was recalcitrant in failing to use the scaffold instead of the A-frame ladder (see e.g. Garcia v Emerick Gross Real Estate, L.P., 196 AD3d 676). We express no opinion on the merits of such potential arguments.
Although we credit Yalcin's affidavit on the events leading up to the accident and the alleged conversation after the accident, as we must for purposes of the plaintiff's motion for summary judgment (see generally Murray v Community House Hous. Dev. Fund Co., Inc., 223 AD3d 675, 677), contrary to ATA's contention, doing so does not raise a triable issue of fact as to the plaintiff's credibility regarding how the accident itself occurred. For that reason, ATA's reliance upon Singh v New York City Hous. Auth. (211 AD3d 496, 497), in which the Appellate Division, First Department, held that the affidavit of the foreman raised a triable issue of fact as to whether the accident occurred, is misplaced. Unlike the situation in Singh v New York City Hous. Auth. (211 AD3d at 497), where the plaintiff in that case testified that the foreman witnessed the accident and immediately assisted him, and the foreman, in an affidavit, denied that the events as described by the plaintiff transpired, here, the plaintiff never testified that Yalcin witnessed the accident. There is nothing in Yalcin's affidavit—other than mere speculation—to present a bona fide issue regarding the plaintiff's credibility as to how the accident itself occurred (see Passos v Noble Constr. Group, LLC, 169 AD3d at 708; Escobar v Safi, 150 AD3d 1081, 1083; Marrero v 2075 Holding Co. LLC, 106 AD3d at 409; Melchor v Singh, 90 AD3d at 869; Inga v EBS N. Hills, LLC, 69 AD3d 568, 569; Rivera v Dafna Constr. Co., Ltd., 27 AD3d 545, 546; see also Sangare v 985 Bruckner Blvd. Hous. Dev. Fund Corp., 212 AD3d 547 [the dispute concerning damages did not raise credibility issues relative to the issue of liability where the plaintiff gave no inconsistent version of how the accident occurred, nor was there any evidence contradicting the allegation that the scaffold collapsed]; cf. Smigielski v Teachers Ins. & Annuity Assn. of Am., 137 AD3d 676 [the testimony of the senior project manager that the plaintiff's employer did not do any ceiling work or use scaffolds and no scaffolds were present in the area where the plaintiff allegedly was working at the time of the accident raised triable issues of fact as to whether the accident occurred as the plaintiff claimed]).
Accordingly, ATA failed to raise a triable issue of fact through the submission of Yalcin's affidavit.
IV. Precision Pain Medical Records
Nevertheless, ATA contends that the plaintiff's alleged statement in the certified Precision Pain medical records raised a triable issue of fact as to how the accident occurred and was admissible under the business records exception and as a party admission. Although the plaintiff acknowledges that the Precision Pain medical records are certified by the custodian of records, he contends, as he did before the Supreme Court, that the statement regarding how the accident occurred is still hearsay. He contends that this statement was not germane to his medical diagnosis or treatment and the statement was not sufficiently attributable to him.
We start with a reminder that the challenged statement regarding how the accident occurred in the Precision Pain medical records involves multiple levels of hearsay (see Matter of Leon RR, 48 NY2d 117, 122 [each report in the files and each of the statements contained in those reports were admissible only if they qualified as business records]; Yassin v Blackman, 188 AD3d 62, 65 [use of a statement recorded in a police accident report involves two levels of hearsay]; see also People v Ortega, 15 NY3d 610, 620-621 [Smith, J., concurring]). The first level of hearsay is the medical records themselves, and where the proper foundation is laid, medical records may be admissible through the business records exception (see CPLR 4518; Carcamo v Stein, 53 AD3d 520, 521; see also Yassin v Blackman, 188 AD3d at 65). However, medical and hospital records may [*4]contain not only written statements reflecting the medical provider's own personal knowledge, but also the statements of the patient, statements of others accompanying the patient, and/or statements and reports by other medical providers. Such statements and reports, contained in the medical records, are hearsay within hearsay (see Matter of Leon RR, 48 NY2d at 122; Johnson v Lutz, 253 NY 124, 128; see also People v Ortega, 15 NY3d at 620-621 [Smith, J., concurring]).
In this case, as there is no dispute that the Precision Pain medical provider, Khaimov, did not have personal knowledge of how the plaintiff's accident allegedly occurred, the challenged statement is attributable to someone else—allegedly the plaintiff—and it is hearsay within hearsay (see Matter of Leon RR, 48 NY2d at 122; Johnson v Lutz, 253 NY at 128; see also People v Ortega, 15 NY3d at 620-621 [Smith, J., concurring]). For the challenged statement to be admissible, both the medical records themselves and the challenged statement contained therein must satisfy hearsay exceptions (see Matter of Leon RR, 48 NY2d at 122; Yassin v Blackman, 188 AD3d at 65; see also People v Ortega, 15 NY3d at 620-621 [Smith, J., concurring]). "[A] party's admission contained within a [medical record] may not be bootstrapped into evidence if a proper foundation for the admissibility of the [record] itself has not been laid" (Yassin v Blackman, 188 AD3d at 67). Conversely, the fact that medical records themselves may be admissible under the business records exception does not establish that every hearsay statement contained therein is admissible (see People v Ortega, 15 NY3d at 619-620; Greca v Choice Assoc. LLC, 200 AD3d 415, 415; see also Johnson v Lutz, 253 NY at 128; Yassin v Blackman, 188 AD3d at 66). For the reasons that follow, we conclude that both the medical records themselves and the challenged statement therein satisfy the business records exception.
"Generally, business records are deemed trustworthy both because they reflect routine business operations and because the person making the particular entry has the responsibility to keep accurate records that can be relied upon for business purposes" (People v Ortega, 15 NY3d at 617; see Williams v Alexander, 309 NY at 286). "Hospital [or medical] records, in particular, are trustworthy as they are designed to be relied upon in affairs of life and death and as they reflect the condition of a patient who has the clear motivation to report accurately" (People v Ortega, 15 NY3d at 617 [citation and internal quotation marks omitted]; see Williams v Alexander, 309 NY at 288). Nevertheless, as we will discuss, hospital and medical records are treated differently than other business records, such as police accident reports or other investigation reports.
To qualify as business records, entries in a hospital or other medical record must be made in the regular course of business of the hospital or medical provider and for the purposes of assisting in the business of that hospital or medical provider (see Williams v Alexander, 309 NY at 287; see also Matter of Leon RR, 48 NY2d at 122 [the proponent of the record must demonstrate that it was within the scope of the entrant's business duty to record the act, transaction, or occurrence sought to be admitted]). "The business of a hospital [or medical provider] is to diagnose and treat its patients' ailments" (Williams v Alexander, 309 NY at 287). Thus, with respect to medical records, the scope of the "business duty" of medical personnel is limited to recording information relating to diagnosis and treatment. Accordingly, the only entries in medical records that are admissible under the business records exception are those that are germane to the diagnosis or treatment of the patient (see id.; Grechko v Maimonides Med. Ctr., 188 AD3d 832, 833-834; Nelson v Bogopa Serv. Corp., 123 AD3d 780, 781). By contrast, entries that are not germane to medical diagnosis and treatment "may not be regarded as having been made in the regular course of the hospital's business" and, therefore, are not admissible under the business records exception (Williams v Alexander, 309 NY at 288; see People v Ortega, 15 NY3d at 617).
"[A] memorandum made in a hospital record of acts or occurrences leading to the patient's hospitalization — such as a narration of the accident causing the injury — not germane to diagnosis or treatment, is not admissible under" the business records exception (Williams v Alexander, 309 NY at 287 [emphasis added]; see People v Ortega, 15 NY3d at 617). It is the business of the hospital or medical provider to diagnose the patient's condition and to treat his or her injuries, not to record a statement describing the cause of the incident in which the patient's injuries were sustained (see Williams v Alexander, 309 NY at 287). Although the particulars of how an injury occurred may be "a natural subject of the doctor's curiosity," those statements were "never intended to be relied upon in . . . the treatment of the patient," and there was "no need in that case for the physician to exercise care in obtaining and recording the information or to question the version" of events provided to him or her (id. at 288). Thus, for medical records, a proper foundation includes that the statement sought to be admitted was germane to the patient's diagnosis [*5]and treatment.
Nevertheless, Williams v Alexander did not establish a bright-line rule that a description as to the manner in which the patient's injury occurred is never germane to diagnosis and treatment. "In some instances, . . . the patient's explanation as to how he [or she] was hurt may be helpful to an understanding of the medical aspects of his [or her] case" (id.; see People v Ortega, 15 NY3d at 617). As the Court of Appeals explained in Williams v Alexander (309 NY at 288), whether an injured person was hit by an automobile may assist the doctors in understanding the medical aspects of the patient's case.
"However, whether the patient was hit by car A or car B, by car A under its own power or propelled forward by car B, or whether the injuries were caused by the negligence of the defendant or of another, cannot possibly bear on diagnosis or aid in determining treatment" (id.).
More recently, in People v Ortega (15 NY3d at 613), the Court of Appeals decided two criminal appeals in which the "common issue" was whether certain statements appearing in medical records were properly admitted under the business records exception to the hearsay rule. After extensively discussing Williams v Alexander, the Court of Appeals analyzed whether the challenged statements in both cases were relevant to the patients' diagnosis and treatment (see id. at 618).
In one of the cases, People v Benston (70 AD3d 479, affd 15 NY3d 610), the defendant challenged references in the complainant's medical records to an "old boyfriend" as the perpetrator of the crime, the description of the case as involving "domestic violence," references to a "safety plan" for the complainant, and the description of the weapon involved as a "black" leather belt (People v Ortega, 15 NY3d at 618 [internal quotation marks omitted]). The Court of Appeals held that the references to domestic violence and to the existence of a safety plan were admissible under the business records exception because those statements were relevant to the complainant's diagnosis and treatment (see id. at 619). As to the reference to the black leather belt, the nature of the weapon used to strangle the complainant—a leather belt—may have been relevant to diagnosis and treatment; however, the color of the belt had no such relevance (see id.).
In the other case, People v Ortega (64 AD3d 422, affd 15 NY3d 610), the complainant testified that the defendant and another man escorted him, at gunpoint, to a nearby building where they forced him to smoke crack cocaine, and then forced him to withdraw money from an ATM (see People v Ortega, 15 NY3d at 615-616). By contrast, the defendant testified that the complainant voluntarily smoked crack with him and that the complainant withdrew the money from his bank accounts of his own volition (see id. at 616). The Court of Appeals held that whether the complainant was "forced to" smoke a white, powdery substance was relevant to the complainant's diagnosis and treatment because under such a scenario, the complainant would not have been in control over either the amount or the nature of the substance he ingested and the treatment of a patient who is the victim of coercion may differ from a patient who has intentionally taken drugs (id. at 620 [internal quotation marks omitted]).
With these principles in mind, we turn to the issue of whether Khaimov, the Precision Pain medical provider who recorded the challenged statement, recorded that statement in the regular course of business because the statement was germane to the plaintiff's medical diagnosis or treatment (see Matter of Leon RR, 48 NY2d at 122; Williams v Alexander, 309 NY at 288). The medical records indicated that Khaimov saw the plaintiff for the chief complaint of lower back pain and right shoulder pain. The records also indicated that Khaimov performed an examination of the plaintiff's shoulder and back and discussed options for treatment, including physical therapy, medications, spinal injections, and surgical options. The challenged statement in the medical records indicated that the plaintiff "was on a ladder, was picking up heavy [sheetock] and felt a pull on his lower back and [right] shoulder." Notably, in contrast to the plaintiff's deposition testimony, the challenged statement makes no mention that the plaintiff fell off the ladder.
In our view, it was germane to Khaimov's medical diagnosis and treatment of the plaintiff that the plaintiff's shoulder and back allegedly were injured as he was picking up a heavy object and "felt a pull" (see Hunter v Motor Veh. Acc. Indem. Corp., 234 AD3d 1298, 1299 [the plaintiff's statements to medical personnel regarding how she allegedly was struck and where on her body she allegedly was struck were germane to diagnosis]; Wright v New York City Hous. Auth., 273 AD2d 378, 379 [statement that the plaintiff had been running immediately prior to sustaining the injury was relevant to medical diagnosis and treatment]; Eitner v 119 W. 71st St. Owners Corp., 253 [*6]AD2d 641, 642 [the plaintiff's description as to how the injury occurred, which was that he twisted his knee after stepping off the ladder, was relevant not only to the treatment of his knee condition, but also to the determination of the presence and extent of injuries to other parts of his body]). First, the statement that the plaintiff "felt a pull" indicates the sensation that the plaintiff felt as the injury allegedly occurred (see Eitner v 119 W. 71st St. Owners Corp., 253 AD2d at 641-642 [the plaintiff "twisted" his knee (internal quotation marks omitted)]). Second, the medical records themselves indicate that how the accident occurred was relevant to medical diagnosis or treatment. Among other things, on pages three and four of the medical records, Khaimov noted that the incident the "patient described" was the "competent medical cause of this injury" and that "the patient's history of the injury" was "consistent with [his] objective findings."
To return to Williams v Alexander (309 NY 283) and People v Ortega (15 NY3d 610), whether a patient was injured picking up a heavy object is analogous to whether a patient was injured after being hit by an automobile (see Williams v Alexander, 309 NY at 288) or being strangled with a leather belt (see People v Ortega, 15 NY3d at 619), not which automobile hit the patient (see Williams v Alexander, 309 NY at 288) or the color of the leather belt (see People v Ortega, 15 NY3d at 619-620).
A comparison between the versions of the incident in the Precision Pain medical records and the plaintiff's deposition testimony emphasizes this point. Whereas the Precision Pain medical records indicated that the plaintiff was injured as he was lifting a heavy object and felt a pull, the plaintiff's deposition testimony indicated that he was injured after he fell seven feet off a ladder. Injury and pain caused by a seven-foot fall from a ladder present different diagnostic and treatment concerns than injury and pain caused by lifting a heavy object and a "pull," especially absent any reference to the plaintiff suffering a fall after that pull (see id. at 620 [relevant to medical diagnosis and treatment whether the complainant was forced to ingest crack or voluntarily ingested crack]; Eitner v 119 W. 71st St. Owners Corp., 253 AD2d at 642 [relevant to medical diagnosis and treatment whether the plaintiff fell off a ladder and landed on his knee or whether he twisted his knee after he stepped off the ladder]).
By contrast, it may be that whether a patient fell from a ladder that collapsed or whether he or she lost his or her balance and fell from a scaffold may not be germane to medical diagnosis and treatment (see Gomez v Kitchen & Bath by Linda Burkhardt, Inc., 170 AD3d 967, 969; see also Mosqueda v Ariston Dev. Group, 155 AD3d 504, 504 ["[w]hether the subject ladder was wooden or metal or whether [the] plaintiff fell because it slipped or because the rung cracked" was not germane to diagnosis or treatment]). So too it may not be germane to medical diagnosis or treatment whether a patient was injured because he or she fell from a height or jumped from that height (see Sermos v Gruppuso, 95 AD3d 985, 985; Quispe v Lemle & Wolff, Inc., 266 AD2d 95, 96). Similarly, in some situations, it may be that all the medical provider needed to know for diagnosis and treatment was that the patient "fell and landed on something hard" (Haulotte v Prudential Ins. Co. of Am., 266 AD2d 38, 39 [internal quotation marks omitted]). But that is not the situation here, as the challenged statement makes no mention that the plaintiff fell from any ladder or indeed fell at all.
There also may be instances where it is not obvious whether a particular entry is or is not germane to medical diagnosis or treatment (see Benavides v City of New York,115 AD3d 518, 519 [no evidence supporting the defendants' position that the medical doctors needed to know whether the plaintiff jumped or whether he was pushed from the fence]). In such situations, there may need to be evidence from a medical provider or an expert on the issue of whether the entry was germane to medical diagnosis and treatment (see id.). But again, that is not the situation here.
Because we find that the challenged statement was germane to medical diagnosis and treatment, we conclude that it was part of Khaimov's regular business practice to record the challenged statement.
Nevertheless, this conclusion "satisfies only half the test" (Matter of Leon RR, 48 NY2d at 122). Each participant in the chain producing the challenged statement in the Precision Pain medical records, "from the initial declarant to the final entrant, must be acting within the course of regular business conduct or the declaration must meet the test of some other hearsay exception" (id.; see Johnson v Lutz, 253 NY at 128). Firsthand accounts from the patient to the medical provider are presumptively reliable, as the patient has a clear motivation to report accurately (see People v Ortega, 15 NY3d at 617 n 3). However, "where the source of the information on the hospital or doctor's record is unknown, the record is inadmissible" (Ginsberg v North Shore Hosp., [*7]213 AD2d 592, 592; see Matter of Progressive Northeastern Ins. Co. v Randazzo, 24 AD3d 560; Sanchez v Manhattan & Bronx Surface Tr. Operating Auth., 170 AD2d 402, 404; Mercedes v Amusements of Am., 160 AD2d 630, 631; Wilson v Bodian, 130 AD2d 221, 233; see also People v Townsley, 240 AD2d 955, 957).
We reject the plaintiff's contention that testimony or an affidavit from the medical provider who recorded the challenged statement was required to identify the plaintiff as the source of the challenged statement. Although such evidence is certainly one way to identify the source of the information, it is not the only way to do so. In other cases, this Court has held that the medical record itself was sufficient to indicate that the plaintiff was the source of the information (see Robles v Polytemp, Inc., 127 AD3d 1052, 1054 ["[t]he hospital records containing the challenged entries clearly indicated that the plaintiff was the source of the information contained therein"]; see also Goodrich v Watermill Townhouses, 169 Misc 2d 314, 319 [Sup Ct, Ulster County] [the records clearly indicated that the plaintiff stated that the accident happened in the manner indicated]).
However, to be sufficient, the medical record must clearly indicate that the plaintiff was the source of the information (see Robles v Polytemp, Inc., 127 AD3d at 1054). Where there are ambiguities in the medical record, which could indicate that someone else, such as someone accompanying the patient, may have provided the information, the medical record alone is insufficient to establish that the patient was the source of the information (see Ginsberg v North Shore Hosp., 213 AD2d at 592 [the references to the diagnoses appeared to come from other unknown charts or records, and may have been part of the history relayed by the plaintiff herself or her counsel]). Likewise, a lack of any evidence in the medical record itself indicating that the patient was the source of the information is plainly insufficient. It is those situations where testimony from the provider—or some other evidence—is necessary for the proponent to establish that the patient was the source of the information (see Mikel v Flatbush Gen. Hosp., 49 AD2d 581, 582).
To the extent that the First Department has held that the testimony from the medical provider who recorded the challenged statement is always necessary to establish that the patient was the source of the information, we respectfully disagree (see Mosqueda v Ariston Dev. Group, 155 AD3d at 504). In Mosqueda v Ariston Dev. Group (155 AD3d at 504), the First Department stated that "[a]ny statement in the medical records allegedly attributable to [the] plaintiff does not qualify as an admission unless the [individual] who recorded it were to testify that it was the [plaintiff]'s statement" (internal quotation marks omitted). The First Department appeared to rely upon two decisions from this Court, Mikel v Flatbush Gen. Hosp. (49 AD2d at 582) and Gunn v City of New York (104 AD2d 848, 849), as well as its own decision in Quispe v Lemle & Wolff, Inc. (266 AD2d at 96).
However, in our view, none of those cases support the conclusion that testimony from the provider who recorded the statement is always required. Quispe v Lemle & Wolff, Inc., and Gunn v City of New York involved instances where the medical providers who recorded the statements testified that they were unable to recall whether the patient or someone else was the source of the challenged statements (see Quispe v Lemle & Wolff, Inc., 266 AD2d at 96 [the nurse, who never spoke to the plaintiff regarding the cause of her injuries, left it unclear whether he obtained his information pertaining thereto from an emergency medical service worker, a hospital translator, or a combination of the two]; Gunn v City of New York, 104 AD2d at 849 [the medical provider who made the entry did not recall whether the plaintiff or whether anyone other than the plaintiff had given him the information]). In Mikel v Flatbush Gen. Hosp. (49 AD2d at 582), the hospital record did not reflect that the patient made the challenged statement to the decedent, but this Court held that the statement may be admissible if the doctor testified that the patient did tell him this. There was no indication in any of these decisions that the hospital records themselves provided the requisite connections to the patients (see Quispe v Lemle & Wolff, Inc., 266 AD2d at 96; Gunn v City of New York, 104 AD2d at 849; Mikel v Flatbush Gen. Hosp., 49 AD2d at 582). As such, the challenged statements in those cases were inadmissible, absent testimony from the providers sufficiently attributing the challenged statements to the patients.
By contrast, here, the Precision Pain medical records indicated that the plaintiff was the source of the challenged statement (see Robles v Polytemp, Inc., 127 AD3d at 1054). On pages three and four of the medical records, Khaimov indicated that the incident the "patient described" was the competent medical cause of the injury, the "patient's complaints" were consistent with his history of the injury, and the "patient's history of the injury" was consistent with Khaimov's objective findings.
In addition, the plaintiff was questioned about the challenged statement during his deposition and was specifically asked about the history he provided to Precision Pain.
"Q Did whoever you provided the accident history to speak Spanish?
"A No, he or she spoke English.
"Q Was there anyone at Precision who spoke Spanish?
"A No, I spoke in Spanish — I'm sorry. I spoke in English.
"Q So you didn't bring a translator, there was nobody translating?
"A No. Because the doctor asked me if I spoke English and I said yes, a little bit, and then he didn't say anything else.
"Q The way the accident is described is you were on a ladder. You were picking up heavy [s]heetrock and felt a pull in your lower back and right shoulder.
"A They probably misunderstood me" (emphasis added).
Although he was asked about the history he provided, the plaintiff did not indicate that someone besides the doctor and himself was present, or that someone else provided the history. When asked specifically about the challenged statement, the plaintiff did not deny making it. Instead, he testified that the doctor probably misunderstood him. Considering both the plaintiff's deposition testimony and the statements on the third and fourth pages of the Precision Pain medical records, ATA sufficiently established that the plaintiff was the source of the information in the challenged statement (cf. Sanchez v Manhattan & Bronx Surface Tr. Operating Auth., 170 AD2d at 404 [the plaintiff testified that in the emergency room he was semi-conscious and that he did not recall telling anyone at the hospital how the accident occurred, and there was no suggestion in the report itself that the information was provided by the plaintiff]).
As to the plaintiff's contention regarding an alleged language barrier, these concerns go to the weight to be afforded to the challenged statement and to its credibility, not its admissibility. At trial, the plaintiff may explore whether Khaimov misunderstood the plaintiff, the plaintiff's alleged fluency or lack thereof in English, and any other issues that are relevant to the credibility of the challenged statement and the weight to be afforded it. But these contentions do not preclude the admission of the challenged statement under the business records exception (see generally Gangi v Fradus., 227 NY 452, 457 [the jury determines whether or not the admission was made; if made, the conditions and circumstances under which they were made and the effect thereof, and their probative weight and value, which may range from the lowest, or none at all, to conclusiveness]; Zalewski v MH Residential 1, LLC, 163 AD3d 900, 901 [although the plaintiff offered an explanation as to why he gave a different account to his physicians as to how he was injured, it was not the court's function on a motion for summary judgment to assess credibility]; Preldakaj v Alps Realty of NY Corp., 69 AD3d 455, 456 [evidence concerning the effects of the morphine administered to the plaintiffs during treatment goes to the weight to be accorded the admissions, not their admissibility]).
We also note that the challenged statement itself was originally recorded in English and the plaintiff himself testified that he spoke in English to the Precision Pain medical provider without using an interpreter. Thus, the proponent of the admission of the challenged statement, ATA, does not have an additional obligation to establish that any purported translation was provided by a competent, objective interpreter whose translation was accurate. Simply put, on this record, there was no translation of the challenged statement in the Precision Pain medical records (cf. Nassa v 1512 LLC, 198 AD3d 600, 600; Quispe v Lemle & Wolff, Inc., 266 AD2d at 96 [the hospital triage report was potentially admissible in evidence but only upon a showing by the defendants, as proponents of the evidence, that the plaintiff was the source of the information recorded, and that the translation was provided by a competent, objective interpreter whose translation was accurate, a fact generally established by calling the translator as a witness]).
Finally, in view of our determination that the challenged statement was germane to [*8]the plaintiff's medical diagnosis and treatment, we do not decide whether the challenged statement would have been admissible as a party admission, even if it were not germane to diagnosis or treatment (see e.g. Fraser v 147 Rockaway Pkw, LLC, 203 AD3d 894; Grechko v Maimonides Med. Ctr., 188 AD3d at 834; Robles v Polytemp, Inc., 127 AD3d at 1054; Coker v Bakkal Foods, Inc., 52 AD3d 765, 766; Berrios v TEG Mgt. Corp., 35 AD3d 775, 776).
In this case, ATA established that the challenged statement in the Precision Pain medical records was admissible under the business records exception. The challenged statement raised a triable issue of fact as to whether the accident occurred in the manner alleged by the plaintiff (see Giannas v 100 3rd Ave. Corp., 166 AD3d at 855; Zalewski v MH Residential 1, LLC, 163 AD3d at 901; Xirakis v 1115 Fifth Ave. Corp., 226 AD2d 452, 453).
V. Miscellaneous
The parties' remaining contentions either are without merit or need not be reached in light of our determination.
Accordingly, the Supreme Court properly denied the plaintiff's motion for summary judgment on the issue of liability on the causes of action alleging a violation of Labor Law § 240(1).
Therefore, the order is affirmed.
WARHIT, TAYLOR and GOLIA, JJ., concur.
ORDERED that the order is affirmed, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court